ANDERSON *v.* GRANT.

CONTRACTS—NEGLIGENCE OF SUBCONTRACTOR—UNSETTLED CLAIMS.
  Defendant, who had a municipal paving contract, verbally sublet
  the excavating to plaintiff at the contract price.   By the terms
  of defendant's contract, he was required to maintain colored
  lights at night around all excavations, and it was further
  provided that he should save the municipality harmless from
  loss occasioned by his negligence.   Relying upon a general
  custom that the person doing the excavating should guard
  against accident, defendant failed to put up any lights, and,
  plaintiff providing none, a traveler was injured.   Defendant
  thereupon refused to pay over to plaintiff the full contract
  price, and plaintiff, pursuant to a provision in the contract,
  filed with the board of public works a statement of the bal-

| 114 | 161 |
| s124 | 471 |
| 114 | 161 |
| p151 | 468 |
| p151 | 469 |
| p151 | 471 |

ance due him, requesting that the amount be retained by the board from moneys going to defendant. The board, upon settling with defendant, took back his certified check, payable to its order, for the amount in controversy. Plaintiff brought suit against defendant while the claim for injuries was pending before the common council. *Held*, that he could not recover.

Error to Wayne; Donovan, J. Submitted April 15, 1897. Decided September 14, 1897.

*Assumpsit* by Andrew Anderson against Archibald Grant to recover a balance claimed to be due upon a contract for excavating. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Charles Flowers*, for appellant.

*Fred A. Baker*, for appellee.

LONG, C. J. August 1, 1894, Archibald Grant, the appellee, entered into a contract with the city of Detroit to pave River street, from the east curb line of McKinstry avenue to the west curb line of Artillery avenue, with cedar blocks on plank and sand foundation. The pavement was to be "in conformity with the specifications and estimates hereto attached and made a part of this contract, and the grades and cross sections of said work now on file in the board of public works' office, according to all the conditions herein named, and to the acceptance of the said party of the first part." The specifications referred to contained the following provisions:

"Colored lights, and, if required, night watchmen, are to be maintained, at the expense of the contractor, when necessary to prevent accident."

"The contractor, for himself or for any subcontractor under him, shall well and truly pay, as the same may become due and payable, all indebtedness which may become due to any person, firm, or corporation on account of any labor or material furnished in connection with

the contract of which these specifications form a part; and in case of his failure so to do, and on written notice of any unpaid claim for labor or material, as above, being filed with the board of public works, a sum of money sufficient to cover such claim or claims shall be retained from any moneys due said contractor or his subcontractor, and, if such claim or claims be fully substantiated to the satisfaction of the board of public works, said board shall pay such claim or claims from the moneys so retained, any residue to be paid to such contractor on the completion of the work."

In the contract itself the contractor agreed, among other things, to do the following:

" *Third.* To erect and maintain a good and sufficient fence, railing, or barrier around any and all excavations necessary for said work, in such a manner as to prevent accidents; to place upon said railing, fence, or barrier, at twilight of each day, suitable and sufficient colored lights, and to keep them burning during the night; and, ·further, to pay to, indemnify, and save the city harmless against all loss and damage which may be occasioned or arise by reason of any negligence or carelessness on his part in doing such work."

" *Thirteenth.* That the contractor will pay, indemnify, and hold the city of Detroit harmless for and against all damages, costs, and expenses which the city may suffer, or may come to it or arise from any act done or suffered by the said contractor or any of his agents, subcontractors, or employés, or of any neglect, default, or omission by such contractor, his agents, subcontractors, or employés, to do or perform any act or duty imposed upon such contractor by the contract or by law."

Defendant's bid for doing the excavating necessary to lay the pavement was 15 cents per cubic yard. Instead of doing the work himself, he sublet it to Andrew Anderson, the plaintiff and appellant, at the same price, and Anderson did the work. This contract was not in writing. Plaintiff did not put up any colored lights to prevent persons from getting into the excavation pending the laying of the pavement. As a consequence, William Dooley, who was riding in a grocery wagon along River street, was dumped into the excavation and severely in-

jured. At the time the present suit was tried, William
Dooley had presented a claim to the common council
against the city of Detroit, and it was pending before the
common council for allowance. The excavation done by
plaintiff, at 15 cents per cubic yard, amounted to $1,621.65,
of which $1,200 was paid to him by defendant, leaving a
balance of $421.65, claimed by him in this suit. It ap-
pears from the testimony of plaintiff himself that he filed
a claim with the board of public works when defendant
did not pay him, and that he insisted that the board
should hold the money back from defendant until defend-
ant paid him. The board of public works did hold the
money back by requiring defendant, before receiving a
warrant for the amount due him on the contract, to
deposit with the board of public works a certified check
for $421.65, payable to the order of the board. That
check is still in the hands of the board of public works.
Plaintiff testified that he considered it defendant's duty to
put up the lights, and that he had no agreement to save
the defendant harmless from any damage. But defend-
ant testified that it is the business of the man who is doing
the excavating to put up the lights, and that such is the
practice. John McVicar, a member of the board of public
works, testified that the fact or practice in regard to it is
that the man who does the work attends to it. The court
below directed a verdict for the defendant, and the plain-
tiff brings the case to this court on bill of exceptions and
writ of error.

It appears that the plaintiff took the contract from the
defendant at the same price at which the defendant had
taken it from the city. The contract contained provisions
in reference to the keeping up of lights in the night-time,
and also with reference to saving the city harmless from
all damages by reason of any accident, etc.; and plaintiff
was to do the work in accordance with that contract.
But, whether the contract contained this provision or not,
he was bound to guard the work he was in the performance of. He could not leave it in a dangerous condition

to passers-by without becoming liable for the consequences. It is confessedly his fault that it was left in a dangerous condition.    The defendant had nothing to do with it. Plaintiff could not bring his action on the contract until he had fully performed on his part.    Under all the circumstances, we are satisfied that the court below was not in error in directing the verdict in favor of defendant.

The judgment is affirmed.

The other Justices concurred.