GLAPPA *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILROAD CO.

1. RAILROADS—NEGLIGENCE—DUTY TO PUBLIC—PERSONAL INJURIES —CONTRACTS—EVIDENCE.

Evidence that the defendant railroad company had entered into a written obligation with a dealer in sand and lime who agreed to keep clear of materials the side track which defendant maintained in his yard, was immaterial and incompetent to defeat plaintiff's claim for personal injuries resulting from a derailment and collision with his vehicle that was standing near the track; the accident being caused by an accumulation of sand upon the rails.

2. SAME—EVIDENCE—NEGLIGENCE—SWITCHES.

Freedom from negligence on the part of defendant railroad company was not established because the owner of the yard in which the private switch had been constructed had obligated himself to keep the track free from such sand or materials.

3. SAME.

Nor did the fact that plaintiff was an employee of the owner of the yard who had so contracted, release the railroad company from liability for negligence in moving a car over an obstruction that was sufficient to derail it.

4. SAME—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE.

The question of plaintiff's contributory negligence in not driving further from defendant's switch or spur track, upon testimony that he did not know of the alleged obstruction, was properly submitted as a question of fact to the jury.

Error to Wayne; Hally, J. Submitted October 14, 1914. (Docket No. 34.) Decided March 26, 1914.

Case by Casimir Glappa against the Detroit, Grand Haven & Milwaukee Railroad Company and another for personal injuries. Judgment for plaintiff against said corporation which brings error. Affirmed.

*Harrison Geer*, for appellant Detroit, Grand Haven & Milwaukee Railroad Co.

*Dohany & Dohany*, for appellee.

Defendant Boomer, a dealer in sand, lime, cement, gravel, and like products, maintains a yard east of and adjoining the defendant railway company's right of way, between Forest and Garfield avenues, in the city of Detroit. A private side track was built into said yard connecting with the defendant railway under a contract between defendant Boomer and the railway, which provided:

"The contractor (Boomer) shall * * * at all times keep the whole of said siding clear of sand, ice, and obstructions."

At one point along the side track Boomer had caused to be unloaded several car loads of sand. This pile of sand, the exact height of which is in dispute, sloped towards the side track. On July 29, 1909, a string of six cars stood upon said side track. Plaintiff, a teamster employed by Boomer, was engaged in shoveling crushed stone from one of these cars into

his wagon, which stood alongside the car. Some of
the cars were loaded, some empty. At about 2:30 p.
m., defendant railway sent its switching crew to the
yard to perform the necessary switching operations.
Plaintiff was duly notified that the car he was work-
ing upon was to be moved, and he was ordered to
drive away. He thereupon mounted his wagon and
drove a very short distance, coming to a stand at a
point which left the rear wheel of his wagon not more
than 3½ feet from the nearest rail of the side track.
The cars were then slowly moved in a southerly direc-
tion. In passing the sand pile, the rear trucks of an
empty car left the rails, and before the train could
be stopped it had come into collision with the wagon.
The jolt was a slight one, resulting in no damage to
either the wagon or the car, but it was sufficient to
throw plaintiff from the wagon to the ground. In
falling, plaintiff suffered a double fracture of one of
his legs.

Plaintiff introduced evidence tending to show that
on the night previous to the day of the accident there
was a very heavy rain; that the rain washed the sand
from the pile down to, over, and upon the side track
to a depth of several inches; and that the cars were
moved while the sand was on the rails, thus causing
the derailment.

Both defendants offered evidence tending to show
that the track was cleaned before the switching opera-
tion, but offered no explanation of the cause of the
derailment.

It was conceded by plaintiff that the movement of
the cars was effected in a proper and careful manner;
the only negligence relied upon being that the defend-
ant railway moved the cars without first clearing the
tracks of the accumulated sand.

At the close of the testimony, the court compelled
plaintiff to elect as to which defendant he would pro-
ceed against. Plaintiff thereupon elected to proceed

against the defendant railway, and a judgment was entered in favor of defendant Boomer. The court likewise directed that Exhibit 2, the agreement between the two defendants, under which the side track was constructed, should be stricken from the record. A judgment having been rendered against defendant railway, the case is reviewed in this court by writ of error.

BROOKE, J. *(after stating the facts).* The first assignment of error argued by appellant is based upon the action of the court below in striking Exhibit 2 from the record and in refusing to direct a verdict in favor of the defendant railway upon the ground that, under the agreement, the duty of keeping the side track free from obstructions rested upon Boomer. There is no doubt that, as between Boomer and the railway, the latter had a right to provide that Boomer should keep the side track clear. *Mann* v. *Railroad Co.,* 135 Mich. 210 (97 N. W. 721). But in an action against the railway company by a third person, based upon the alleged negligent movement of cars over an obstructed track, resulting in injury to such third person, it seems clear that the contract between the railway company and Boomer was incompetent and immaterial. The matter here to be determined is not the liability of Boomer but the liability of the defendant railway. *Robinson* v. *Railroad Co.,* 135 Mich. 254 (97 N. W. 689).

It is next urged that a verdict should have been directed for defendant upon the ground that the evidence does not show negligence on the part of the defendant railway. It is said that, if there was sand upon the track which caused the derailment and consequent injury to plaintiff, it was not put there by defendant railway, nor was it the duty of the railway to remove it. It is true that, if there was sand upon the track which caused the derailment, it was

placed there either directly or indirectly by Boomer, and it is equally true that it was Boomer's duty to have caused it to be removed. It does not, however, therefore necessarily follow that the defendant railway was free from negligence. The mere presence of the sand upon the track was no menace to the plaintiff. If the cars had not been moved, the plaintiff would not have been injured. It was the alleged negligent movement of the cars over the accumulated sand which caused the injury.

Appellant insists that it owed no duty to plaintiff, because plaintiff was Boomer's employee, and the work was carried on in Boomer's private yard ,under a contract which imposed upon Boomer the duty of keeping the track clear. We are unable to agree with this contention. Plaintiff was rightfully upon the premises where, at the time, the defendant railway, in the prosecution of its business, caused the movement of the cars under a condition which resulted in plaintiff's injury. It was the duty of the appellant, in conducting the operation, to use reasonable care to avoid injury to those lawfully upon the premises. Whether it discharged this duty was a question for the jury.

Finally it contended that plaintiff was guilty of contributory negligence as a matter of law. It appears that there was an open space near the track, and that plaintiff could as easily have driven 40 or 50 feet away as to have stopped where he did. He was an experienced teamster and knew the conditions in the yard. He testified that he made no observations to see whether there was sand on the tracks. He was not at the time charged with the duty of clearing the track. We do not think it can be said as a matter of law that he was negligent in failing to observe the condition of the track and in stopping his wagon in such close proximity to the line of cars. The conductor of the train noted his position before giving

the signal to start, and testified that he believed the plaintiff to have been at a safe distance, otherwise he would not have proceeded with the movement. This question, likewise, was for the jury and was determined by them, under the proper instructions.

The judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.