VILLAGE OF PORTLAND v. CITIZENS TELEPHONE CO.

1. NEGLIGENCE—ACTIVE NEGLIGENCE—PASSIVE NEGLIGENCE.

A distinction between active negligence and passive negligence exists, although it is not important that such terms be expressly used; frequently the terms positive tort and negative tort are used to denote the distinction.

2. SAME—CONTRIBUTION—JOINT TORTFEASORS.

Where the wrongful act of one results in liability being imposed on another, such other person may have indemnity from the person actually guilty of the wrong, except that as between actual joint tortfeasors the law will not enforce contribution or indemnity.

On right of municipality to recover indemnity or contribution from one for whose tort it has been held liable, see notes in 40 L. R. A. (N. S.) 1165; L. R. A. 1916F, 86.

3. SAME—JOINT TORTFEASORS—CONTRACT FOR INDEMNITY—VALIDITY.
   Where a village and a telephone company were joint tort-
   feasors, both being guilty of active negligence in causing
   the death of a boy and serious injury to his mother by
   contact with a highly charged electric wire, for which
   judgments were recovered against them, the village is not
   entitled to contribution or indemnity from said company,
   although the ordinance permitting the use of the streets
   for its poles and wires provided that it should save the
   village harmless from any cost or damage to any person
   or property by reason of such construction.

Error to Ionia; Davis, J.   Submitted June 4, 1919.
(Docket No. 38.)   Decided July 17, 1919.

Assumpsit by the village of Portland against the
Citizens Telephone Company for the amount of a judg-
ment.   Judgment for defendant on a directed verdict.
Plaintiff brings error.   Affirmed.

*Nichols & Nichols* (*A. R. Locke,* of counsel), for ap-
pellant.

*Hawley & Eldred* (*Travis, Merrick & Warner,* of
counsel), for appellee.

The plaintiff village of Portland has since 1896
maintained and operated an electric lighting plant.   In
1902 the defendant Citizens Telephone Company ob-
tained from and accepted an ordinance of the village
permitting the use of its streets and alleys for the
purpose of erecting poles and stringing wires.   In-
cluded in the ordinance were the following provisions:

"During the construction of said telephone plant,
which is to be erected in, along, or over highways,
avenues, streets, and alleys in the said village, and
especially during the placing of poles in the streets
thereof, or the putting of conduit therein, the said
Citizens Telephone Company shall not unnecessarily
impede public travel therein, and shall leave all high-
ways, avenues, streets, and alleys and public places

upon which they may enter for the purpose herein authorized, in as good condition as they were at the time of said entry and shall properly guard all work during the progress thereof, and shall put up and maintain red lights and barriers around excavations, and during the construction and maintenance of said plant, shall save the said village of Portland harmless from any cost, or damage to any person or property that may occur by reason of such construction. * * *

"All wires entering any building or buildings shall be so trained and arranged as to cause the least possible obstruction, and in accordance with the best approved method as to safety from fire and other injury to person or property, and all poles shall be erected and wires strung therein in such a manner as not to interfere with the village fire alarm telegraph wires or unnecessarily interfere with any other existing poles or wires."

There is an alley in said village between Kearney and Grant streets extending north from Brush street. On and prior to April 21, 1909, both parties maintained their wires in this alley, plaintiff's being first in time of occupancy. The telephone wires crossed over the electric light wires and sagged to such an extent that it fairly appears that the wires on occasion came in contact and the insulation on the electric light wires became defective. On the last mentioned date a high wind prevailed in the village of Portland; the electric lighting wire of the village, carrying a voltage of 2,000, came in contact with the telephone wire, causing the electric light wire to sever, and one of the ends thus highly charged dropped into Brush street. This live wire in some manner (there was no witness to the accident) came in contact with a young boy about 10 years old, named John Sykes, Jr., who was a pedestrian on Brush street, causing his death. His mother learning of the accident hurried to his assistance, and in attempting to extricate him, herself received a serious shock and other injuries. An

action was brought in the Ionia circuit court by the administrator of the estate of John Sykes, Jr., against the village and telephone company jointly under the death act and a judgment for $1,200 against both defendants was rendered. This judgment was affirmed by this court. *Sykes* v. *Village of Portland*, 177 Mich. 290. An action was brought by Mrs. Sykes against both defendants in the same court and a judgment in her favor for $6,000 was rendered. This judgment was reversed by this court for the erroneous admission of evidence, but it was held that plaintiff had made a case for the jury. *Sykes* v. *Village of Portland*, 193 Mich. 86. A reference to these two cases will disclose more in detail the facts and the plat found in the report of the first case will be of assistance in understanding the situation. The husband of Mrs. Sykes also brought an action against both defendants for the loss of his wife's services.

The telephone company paid the judgment rendered in the case brought by the administrator of the estate of John Sykes, Jr. After the reversal by this court of the case brought by Mrs. Sykes, all of the parties came to an agreement for the settlement of the then pending litigation. This agreement contemplated the discontinuance of the suit brought by Mr. Sykes, a judgment in favor of Mrs. Sykes for $9,000 without costs, a payment of this judgment in equal shares by the village and the telephone company without prejudice to their rights between themselves for contribution or indemnity which was to be determined by future litigation between them. Mr. Sykes' suit was discontinued, a judgment in favor of Mrs. Sykes against both the telephone company and the village was rendered for $9,000; each of them paid $4,500 in satisfaction of the judgment, and this suit was brought by the village to recover the sum so paid together with its expenses incurred by the litigation aggregating

about $3,500. At the close of the proofs the trial judge directed a verdict for the defendant, his reason being:

"It has been held, I think by the verdict of the jury and judgment of this court, and of the Supreme Court in the first case I have cited, and by the judgment of the court in the second case, that these parties were each of them guilty of negligence, active negligence.

"I shall hold in this case, and so instruct you, that the negligence complained of was concurred in by both parties; they became, in law, what is called joint tortfeasors, joint wrongdoers; that a contract between such parties where they concur and join in a wrong, as is done in this case and as has been judicially determined to produce an injury to a third person is not enforceable. Therefore, the plaintiff cannot recover upon this contract.

"The whole subject of this matter has been adjudicated, as I have stated, and passed upon and there ought not to be any contribution between these parties nor right to recover over, as both parties are shown to be joint wrongdoers."

FELLOWS, J. (after stating the facts). That a distinction exists between active negligence and passive negligence must be recognized. Such distinction has been recognized by this court as we shall presently see. It is not important that such terms be expressly used; frequently the terms positive tort and negative tort are used to denote the distinction. It must also be recognized as a general rule that where the wrongful act of one results in liability being imposed on another such other person may have indemnity from the person actually guilty of the wrong. And it must also be recognized that this rule is subject to the exception or to another general rule that as between actual joint tortfeasors, parties in pari delicto, the law will not enforce contribution or indemnity. The important questions presented upon this record are, What are the rights of these parties as between them-

selves under these rules? Into which class does the negligence of the plaintiff as alleged and proven fall?

Illustrative of the class of cases where the right to recover over has been sustained will be found *Anderson* v. *Grant*, 114 Mich. 161; *City of Detroit* v. *Grant*, 135 Mich. 626; *Grant* v. *Maslen*, 151 Mich. 466 (16 L. R. A. [N. S.] 910) ; *Township of Hart* v. *Noret*, 191 Mich. 427, 203 Mich. 376. The first three of these cases involve the same transaction. One Archibald Grant entered into a contract with the city of Detroit to do certain paving. He was to put up colored lights to warn people of excavations in the street and was to save the city harmless. He sublet the contract to one Anderson, who had entire charge of and did the work. Anderson did not put up the colored lights and one Dooley fell into the excavation and was injured. He filed a claim against the city and subsequently brought suit and recovered a judgment. In the first of these cases Anderson brought suit against Grant for a balance due him of $421.65. Dooley's claim was still pending and unsettled. It was held that Anderson could not recover. In the second of these cases the city sued to recover over from Grant the amount of the judgment recovered against it by Dooley. Its right to recover over was sustained. In the third case the representatives of the Grant estate prosecuted to recover over from the representatives of the Anderson estate the amount Grant had been required to pay the city of Detroit on the Dooley judgment and the right to recover over was sustained. The city of Detroit and Grant were guilty of no active negligence. They had absolutely no active part in doing the paving. No act of theirs caused the injury to Dooley. They were not joint tortfeasors with Anderson, nor with each other. The city of Detroit was liable under its statutory duty to maintain the streets and not because of any active negligence on its part. Grant was guilty

of no active negligence but responded over pursuant to the terms of his contract. He was permitted to recover over against the only person guilty of active negligence. In *Township of Hart* v. *Noret, supra*, a recovery over was permitted under the following facts: Noret without authority removed the railings on a bridge over a millrace in order to move several buildings; later he replaced the old railings or built new ones in so defective a manner as that one McRae was injured. McRae sued the township and the mill owners and recovered a judgment which was affirmed by this court. *McRae* v. *Township of Hart*, 179 Mich. 325. The township having paid the judgment brought suit to recover over from Noret, the party guilty of the active negligence. The township, not having itself been guilty of any active negligence but having been held liable under the statute, it was held that recovery could be had.

On the other hand, *Detroit, etc., R. Co.* v. *Boomer*, 194 Mich. 52, will be found to be illustrative of that class of cases where recovery over is refused even though indemnity is expressly agreed upon. That case arose upon the following state of facts: The railroad company had built a private side track into the yard of Boomer, a dealer in sand, lime and like products. Boomer had agreed to keep the track free from obstruction and to indemnify the railroad company. Rain had caused sand to wash upon the track to the depth of several inches which had not been removed by Boomer. The railroad company backed cars down on the side track; in passing the sand pile the rear trucks of an empty car left the rails, causing injury to one Glappa, who brought suit and recovered judgment against the railroad company, which was affirmed by this court. *Glappa* v. *Railroad Co.*, 179 Mich. 76. Thereupon the railroad company brought suit to recover over against Boomer under the pro-

visions of the contract. We there held that the negligence of the railroad company was active negligence, that the parties were joint tortfeasors and that there could be no recovery over.

A case very much in point is *City of Tacoma* v. *Bonnell*, 65 Wash. 505 (118 Pac. 642, 36 L. R. A. [N. S.] 582). In that case one Ohrstrom had been killed by coming in contact with a secondary wire which had become overcharged by coming in contact with a primary wire. His widow and minor children sued and recovered from the city; the city brought the action to recover over from Bonnell. It was alleged that Bonnell had negligently permitted some plank to fall on the wires. But the declaration in the Ohrstrom case had charged the city with negligence in not installing proper ground wires to protect the secondary wires from becoming overcharged, and had failed to detect the dangerous overcharge after notice thereof. It was insisted there, as it is here, that such negligence on the part of the city was passive only, that the parties were not *in pari delicto*, and that recovery could be had. The court, after remarking that, "It seems clear that, but for the concurring negligence of the city and the defendant, no injury would have accrued," considers a number of the authorities and concludes:

"The answer in this case shows that the city was guilty of negligence in maintaining its primary and secondary wires in a dangerous condition, when they might readily have made them safe so that injury would not result if the wires should come in contact. If the city had not been negligent in this respect, the accident could not have occurred, even though the defendant in this action was negligent in causing the wires to come in contact. The concurring negligence of both parties, therefore, caused the injury. Under the authorities above cited, the parties were *in pari delicto*, and neither may recover against the other."

The case of *Atlanta, etc., R. Co.* v. *Telegraph Co.,* 107 Fed. 874, is also quite similar to the instant case. One Owings, an employee of the telephone company, received a shock from a "call wire" of the telephone company, causing his death. It was claimed that such "call wire" came in contact with a "feed wire" of the railway company, which was highly charged with electricity. Owings' widow brought suit against the railway company, alleging that company was negligent in permitting its feed wire, which crossed the call wire, to rest upon it. She recovered a judgment against the railway company and this suit was brought against the telephone company for indemnity. The right to recover was denied. Judge Newman, in denying liability, said:

"While it is true, as has been remarked, that, if the allegations in this declaration were taken alone, the declaration would not be subject to demurrer, yet, when taken in connection with the fact that recovery was had against the Consolidated Company for such character of negligence as made it liable to the public, an entirely different case is presented. The fact that Mrs. Owings could recover against the Consolidated Company for the death of her husband under the circumstances, that company being under no special obligation or peculiar duty to Owings, to my mind necessarily adjudicates and determines the question of such negligence on the part of the Consolidated Company as would prevent a recovery against the Telephone and Telegraph Company. The very most that can be said, taking this entire case together—the declaration in the former suit and in this suit—is that they were joint wrongdoers, and that by their mutual fault these wires came in contact and this dangerous current was diverted."

Another case quite similar to the instant case is *Cumberland, etc., Telegraph Co.* v. *Mayfield Water & Light Co.,* 166 Ky. 429 (179 S. W. 388). We quote the syllabus:

"Through the negligence of an electric company in allowing the insulation to wear off of one of its wires, and that of a telephone company in stringing its wires too low, a connection between the light wire and the telephone wire was formed, resulting in the death of a telephone lineman, whose administratrix recovered 'from the light company:   *Held,* that the negligence of both was concurrent, and the light company could not enforce contribution against the telephone company."

Where the negligence was a failure to inspect, it was held by the Supreme Court of the United States in *Union Stock Yards Co.* v. *Railroad Co.,* 196 U. S. 217 (25 Sup. Ct. 226), that both parties were wrongdoers and there could be no recovery over.   We quote the syllabus:

"A railroad company delivered a car with imperfect brakes to a terminal company; both companies failed to discover the defect which could have been done by proper inspection; an employee of the terminal company, who was injured as a direct result of the defective brake, sued the terminal company alone and recovered.   In an action brought by the terminal company against the railroad company for the amount paid under the judgment:   *Held,* that:
"As both companies were wrongdoers, and were guilty of a like neglect of duty in failing to properly inspect the car before putting it in use, the fact that such duty was first required of the railroad company did not bring the case within the exceptional rule which permits one wrongdoer, who has been mulcted in damages, to recover indemnity or contribution from another, on the ground that the latter was primarily responsible."

See, also, *Doles* v. *Railway Co.,* 160 N. C. 318 (75 S. E. 722, 42 L. R. A. [N. S.] 67) ; *Consolidated Kansas City Smelting & Refining Co.* v. *Binkley,* 45 Tex. Civ. App. 100 (99 S. W. 181) ; *Sparrow* v. *Bromage,* 83 Conn. 27 (74 Atl. 1070, 27 L. R. A. [N. S.] 209) ; *Central of Georgia Ry. Co.* v. *Macon Ry. & Light Co.,*

9 Ga. App. 628 (71 S. E. 1076) ; *Sutton* v. *Town of Dundas,* 17 Ont. L. R. 556.

An examination of the record and briefs in the case of *Sykes* v. *Village of Portland,* 177 Mich. 290, discloses that at that time the village insisted that the actual, effective and proximate cause of the accident was the negligence of the telephone company alone and that therefore the village was not liable, and it was there insisted as it is here that its plant was first installed, and no question seems to have been there made, at least no question is here raised, that it was not safely and properly installed. This court there declined to follow such contention. Speaking through Mr. Justice KUHN, it was said:

"Whether these defendants acted as an ordinarily prudent man would have acted under the circumstances was properly submitted to the jury. It must be said that this accident was the result of concurring causes, the removal of any of which would have prevented the accident.   *   *   *

"When a dangerous condition became apparent, it was the duty of the village officers in charge of the plant, if possible, to remove the danger, and, if the situation was caused by the telephone company, it was the duty of the village officers and employees to request them to remove it. In this regard it seems to us they occupy no different position than the officers and employees of a private corporation would occupy under similar circumstances."

Without basing our decision on the ground that this decision is *res adjudicata* between the parties to this case, we are impressed that the declarations in the *Sykes Cases* and the proofs make out a case of concurrent negligence of the village and the telephone company and that the negligence of each was active. It is true that the village wires were first strung; that they were properly put up and that they would not have come in contact with the telephone wires had not the telephone wires been later improperly installed.

It is true that the proofs show that the telephone wires were so put up that they sagged and came in contact with the village wires; but it is also true that by such contact the insulation on the village wires was worn off; and it is also equally true that the village knew or should have known the exact situation an inspection would have disclosed. The defective condition was as well known to the village as to the telephone company. With these two wires in such close proximity that they would come in contact when the wind was blowing, the village during a high wind sent a deadly current of 2,000 volts over its improperly insulated wire, resulting in the death of young Sykes and the injuries to his mother. This was an active act of negligence, a positive tort. There was nothing passive or negative about it. The defective condition and the crossing of the wires alone were not dangerous to the Sykes boy, the sending of the deadly current over the village wires when such condition existed was. It was said by Mr. Justice BROOKE, speaking for the court in *Glappa* v. *Railroad Co., supra:*

"It is next urged that a verdict should have been directed for defendant upon the ground that the evidence does not show negligence on the part of the defendant railway. It is said that, if there was sand upon the track which caused the derailment and consequent injury to plaintiff, it was not put there by defendant railway, nor was it the duty of the railway to remove it. It is true that, if there was sand upon the track which caused the derailment, it was placed there either directly or indirectly by Boomer, and it is equally true that it was Boomer's duty to have caused it to be removed. It does not, however, therefore necessarily follow that the defendant railway was free from negligence. The mere presence of the sand upon the track was no menace to the plaintiff. If the cars had not been moved, the plaintiff would not have been injured. It was the alleged negligent movement of the cars over the accumulated sand which caused the injury."

We are clearly of the opinion that this case falls within the class of cases and is controlled by *Detroit, etc., R. Co.* v. *Boomer, supra,* and kindred cases.' The parties to this case were joint tortfeasors, both were guilty of active negligence which concurred in producing the death of the Sykes boy; neither is entitled as against the other to contribution or indemnity; they are *in pari delicto* and the law cannot afford relief to either.

The judgment is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN JJ., concurred.