Nick BUFFA, Plaintiff,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant, and J. A. Utley Company, a corporation, Third-Party Defendant.

No. 13624.

United States District Court
E. D. Michigan, S. D.
May 20, 1955.

whereby the latter agreed to furnish labor and materials for the construction of a certain building on the premises of the Buick Motor Division of General Motors. Plaintiff, while employed by Utley as a cement finisher, was allegedly injured while working on the Buick premises. The complaint alleges that an employee of defendant General Motors, while driving an industrial truck commonly known as a "mule" negligently struck another truck which in turn struck a wheelbarrow, thereby causing the wheelbarrow to fall on and injure plaintiff.

Shortly after the filing of the complaint, General Motors added J. A. Utley Company, plaintiff's employer, as third-party defendant by *ex parte* proceedings, stating as a ground therefor that Utley, by virtue of its contract with General Motors, agreed to indemnify and hold harmless the latter by assuming all risks of damage or injury to property or persons used or employed on or in connection with the work which Utley was to perform. Utley has moved to dismiss the third-party complaint on the ground that it fails to state a claim upon which relief can be granted. Utley's contention that plaintiff has made an election by accepting workmen's compensation has been abandoned in the light of Section 17.189, Mich.Stat.Ann. as amended Comp. Laws Supp.1952, § 413.15, and the decision in Rookledge v. Garwood, 340 Mich. 444, 65 N.W.2d 785, holding the amendment retroactive.

The grounds now urged in support of the motion are that, (1) inasmuch as the injuries complained of resulted solely from the negligence of General Motors, the latter may not recover over against Utley, and (2) that the contract between General Motors and Utley is not sufficiently broad in scope so as to be construed as indemnifying General Motors against liability for their own negligence. In support of its position Utley has cited cases for the proposition that the law will not enforce contribution or indemnity between actual joint tort-feasors, and also for the proposition that where

Leitson & Dean, Flint, Mich., for plaintiff.

Ward, Plunkett & Cooney, Detroit, Mich., for defendant.

Lacey, Jones & Doelle, Detroit, Mich., for third-party defendant.

FREEMAN, District Judge.

General Motors Corporation and J. A. Utley Company entered into a contract

one not guilty of active negligence and not a joint tort-feasor is held liable he may have indemnity from the person guilty of active negligence. Village of Portland v. Citizens' Telephone Co., 206 Mich. 632, 173 N.W. 382; Anderson v. Grant, 114 Mich. 161, 72 N.W. 144; City of Detroit v. Grant, 135 Mich. 626, 98 N.W. 405; Grant v. Maslen, 151 Mich. 466, 115 N.W. 472, 16 L.R.A.,N.S., 910; Glappa v. Detroit, etc., R. Co., 179 Mich. 76, 146 N.W. 134; Detroit G. H. & M. R. Co. v. Boomer, 194 Mich. 52, 160 N.W. 542; Township of Hart v. Noret, 191 Mich. 427, 158 N.W. 17, L.R.A.1916F, 83; Indemnity Insurance Company of North America v. Otis Elevator Company, 315 Mich. 393, 24 N.W.2d 104, 171 A.L.R. 266.

The court has carefully considered these decisions, but finds them inapplicable to the case at bar. None of them involved the construction of an indemnity agreement such as is present here. The Village of Portland case merely holds that indemnity will not be enforced as between joint tort-feasors. The dictum in the case does not take into account the existence of an indemnity agreement. The Grant cases are not in point, for there the negligent party was the defendant contractor who was being sued, whereas here General Motors claims indemnity because of possible liability resulting from its own negligence. In fact, City of Detroit v. Grant, supra, seemingly supports General Motors' position since the city recovered under an indemnity agreement from one not guilty of so-called active negligence. In the Boomer case, Boomer simply agreed to keep the railroad track free from obstruction and the case merely held that indemnity would not lie as between joint tort-feasors. Likewise, the Otis case did not involve a contract of indemnity which purported to shift liability from the hotel to Otis, regardless of the hotel's negligence, as is claimed to be the situation here.

■ That parties may lawfully contract to indemnify and save harmless others from the latter's own acts of negligence seems well settled as being not against public policy. J. V. McNicholas Transfer Co. v. Pennsylvania R. Co., 6 Cir., 154 F.2d 265; Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861; Aluminum Co. of America v. Hully, 8 Cir., 200 F.2d 257, 261; Govero v. Standard Oil Co., 8 Cir., 192 F.2d 962; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347; Smoke v. Turner Const. Co., D.C., 54 F.Supp. 369; Russell, for Use of Continental Casualty Co. v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415; 42 C.J.S., Indemnity, § 12.

■ Since the indemnity contract is valid and since the third-party complaint alleges in substance that by reason of such contract the third-party defendant Utley has agreed to assume all responsibility for injuries to persons employed on or in connection with the work which was the subject of the contract, the third-party complaint sufficiently states a claim against Utley upon which relief can be granted. In this regard, it is appropriate to cite Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 183 F.2d 630, 631, wherein the district court dismissed an action brought under an indemnity agreement on the ground that the complaint did not state a claim upon which relief could be granted. The lower court construed the agreement as not covering the indemnitee's own negligence. In reversing, the Court of Appeals stated:

"Thus, on a motion to dismiss a complaint for failure to state a cause of action, the court adopted the most unfavorable construction possible of the contract on which the complaint was based, * * *. We think such construction was not warranted for purposes of disposing of the motion to dismiss. * * *

"We are not convinced that the settlement of the claim under the circumstances briefly stated in the complaint was such an admission of negligence as to conclusively establish that plaintiff's negligence alone caused the injury. *Nor are we convinced that that fact issue is wholly*

*determinative of the issues present-
ed by the complaint.* We think a
serious question of law was present-
ed as to the scope of the indemnity
agreement—certainly 'enough to
withstand a mere formal motion, di-
rected only to the face of the com-
plaint.' * * * Defendant con-
tended, and the District Court ap-
parently adopted its theory, that the
parties intended to limit its liability
to injuries caused by defects and
hazards inherent in the hopper it-
self. We think this is by no means
the only construction that can be
given the language of the parties."
[Emphasis supplied.]

The court, however, does not
wish to rest its decision alone on this
somewhat technical ground. Rule 12(b),
Federal Rules of Civil Procedure, 28 U.S.
C.A., permits the court to treat a motion
to dismiss for failure to state a claim
upon which relief can be granted as one
for summary judgment under Rule 56
where matters outside the pleadings are
not excluded by the court. Considering
the motion thusly, it appears that there
is no issue of fact present, for it is not
disputed that plaintiff was employed by
Utley on the Buick premises. Therefore,
the legal question presented is whether
the contract between the parties can be
construed as indemnifying General Mo-
tors against liability for their own negli-
gence under the undisputed facts of this
case. The pertinent provisions of the
contract are:

"Article XII

"The Contractor shall be respon-
sible for his work and every part
thereof, and for all materials, tools,
appliances, and property of every
description used in connection there-
with. He shall specifically and dis-
tinctly assume and does so assume
all risks of damage or injury to
property or persons used or em-
ployed on or in connection with the
work, and of all damage or injury
to any persons or property wherev-
er located, resulting from any action
or operation under the contract or

in connection with the work, and
undertakes and promises to protect
and defend the Owner against all
claims on account of any such dam-
age or injury.

"Article XIII

"1. The Contractor shall secure
and protect the Owner from any lia-
bility or damage whatsoever, for
injury (including death) to any per-
son or property.

"2. The Contractor and all sub-
contractors shall, during the con-
tinuance of the work under the con-
tract, including extra work in con-
nection therewith:

"(a) Maintain Workmen's Com-
pensation and Employers' Liability
Insurance in amounts sufficient to
protect themselves from any liabili-
ty or damage for injury (including
death) to any of their employees,
including any liability or damage
which may arise by virtue of any
statute or law in force or which may
hereafter be enacted.

"(b) Maintain Public Liability
Insurance in amounts sufficient to
protect themselves against all risks
of damage or injury (including
death) to property or persons wher-
ever located, resulting from any ac-
tion or operation under the contract
or in connection with the work.

"(c) Maintain Automobile Liabil-
ity Insurance, including Property
Damage, covering all owned or rent-
ed equipment used in connection
with the work.

"3. All insurance policies shall
be issued by companies authorized to
do business under the laws of the
State in which the work will be
done. Such policies shall contain
appropriate endorsement to save and
hold harmless the Owner from any
liability or damage whatsoever.
Certificates of insurance evidencing
such insurance and endorsement
shall be filed, before work is start-
ed, with the Architect-Engineer.

"4. No change or cancellation in insurance shall be made without ten (10) days' written notice to the Owner.

"5. Compliance by the Contractor and all subcontractors with the foregoing requirements as to carrying insurance and furnishing certificates shall not relieve the Contractor and all subcontractors of their liabilities and obligations under this heading or under the heading entitled 'Contractor's Responsibility', or otherwise."

As a general proposition, a contract of indemnity which purportedly indemnifies against the consequences of one's own negligence is subject to strict construction and will not be so construed unless it clearly appears from the language used that it was intended to have that effect. Standard Oil Company of Texas v. Wampler, 5 Cir., 218 F.2d 768; Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861; Southern Bell Telephone & Telegraph Co. v. Mayor, 5 Cir., 74 F.2d 983; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347, 175 A.L.R. 30. But, where the scope of the particular indemnity agreement in question is broad enough to permit such result and it is plain from the language used that such was the intention, as stated, no public policy prevents it.

From a comparison of the cases which have construed provisions similar to those here and have held them not sufficiently broad to cover the indemnitee's own negligence, the court is of the opinion that the provisions in those cases are more restricted in scope than those presently under consideration. Citation of a few may be illustrative.

In Standard Oil Company of Texas v. Wampler, 5 Cir., 218 F.2d 768, 770, indemnity was provided for all damages " 'that may arise from Contractor's operations hereunder' ". There the court held that the contract provided indemnity only when the contractor was at fault.

In Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 195 F.2d 467, 469, where the indemnitor agreed to pay all damages to property or persons " 'arising, wholly or in part, from or in connection with' " the construction, maintenance, operation or use of a certain hopper, it was held that that agreement did not cover the indemnitee's negligence where the injury did not arise from the existence, operation or use of the hopper. The court, however, recognized that even this provision was sufficiently broad so as to include indemnity for the indemnitee's own negligence if the facts showed that the injury sustained arose from the construction, maintenance, operation or use of the hopper. Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 183 F.2d 630.

It is pertinent to note that a clause similar in substance to those quoted above is present in the instant contract, e. g., "resulting from any action or operation under the contract or in connection with the work." Were this the only undertaking by Utley, perhaps the court might possibly entertain some doubt as to its scope. But see Smoke v. Turner Const. Co., D.C., 54 F.Supp. 369. This, however, it is unnecessary to decide for a preceding clause in Article XII of the contract clearly indicates an intention to provide indemnity for the present situation, e. g., "and does so assume all risks of damage or injury to property or persons *used or employed on or in connection with the work.*" [Emphasis supplied]. Manifestly this provision is broader in scope than the other, for it in substance provides that the indemnitor, namely, Utley, assumes all risks of injury to its employees used on or in connection with the work contracted for. It does not limit indemnity to injuries arising from any action of the contractor; it goes further and includes indemnity against injuries sustained by persons, such as plaintiff, who, when injured, were at work on the job which was the subject matter of the contract. Contracts must be construed

with reference to the particular situation anticipated and intended by the parties. Utley, in performing its construction work under the contract, would have its workmen on General Motors' property, some of whom might be exposed to the ordinary hazards of the latter's business, which would place an extraordinary burden on General Motors and hence the broad indemnity required of Utley in the contract. Under the circumstances, it is only natural that General Motors should demand protection even from the consequences of its own acts in carrying on its usual business. General Motors needed no protection against the acts of Utley, who carried workmen's compensation insurance, and to hold that the contract did not indemnify against the indemnitee's acts substantially destroys its value under the circumstances in this case. Therefore, the court holds that the third-party defendant's motion to dismiss, considered as a motion for summary judgment, must be denied.

Analogous cases wherein the indemnitor was held liable to the indemnitee for damages resulting from the latter's own negligence are: Atlantic Coast Line R. Co. v. Robertson, 4 Cir., 214 F.2d 746; Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861; Aluminum Co. of America v. Hully, 8 Cir., 200 F.2d 257; J. V. McNicholas Transfer Co. v. Pennsylvania R. Co., 6 Cir., 154 F.2d 265; City of Cleveland, Ohio v. Baltimore & O. R. Co., 6 Cir., 71 F.2d 89; Baltimore & O. R. Co. v. Youngstown Boiler & Tank Co., 6 Cir., 64 F.2d 638; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347; Ruddy v. New York Central Railroad Company, D.C., 124 F.Supp. 470; Smoke v. Turner Const. Co., D.C., 54 F.Supp. 369; Russell v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415.

In Rice v. Pennsylvania R. Co., supra [202 F.2d 862], the contractor agreed to hold harmless the government from all claims for damages of whatsoever nature occurring during removal of scrap iron. In holding that this agreement expressed an intention to indemnify against the government's own negligence, the court stated:

"It is impossible to conceive how any valid claim could arise against the Government for injuries 'occurring during the removal' unless its employees were negligent."

In the McNicholas case, supra [154 F.2d 266], the transfer company and the railroad contracted whereby the former agreed to transport freight. The transfer company agreed to indemnify the railroad for damages by reason of injury to persons or property " 'or other causes whatsoever * * * in connection with Trucker's business or operations hereunder.' " A transfer company employee was injured while performing services for the trucker, which injury resulted from the negligence of a railroad employee. The court concluded that the contract indemnified the railroad against any claims which grew out of the handling or transportation of freight. It stated:

"The provision is plain and *injuries caused by the negligence of the Railroad's employees are not excepted.*" [Emphasis supplied.]

Other Sixth Circuit cases which have permitted indemnity against the indemnitee's own negligence are City of Cleveland v. Baltimore & O. R. Co., supra, and Baltimore & O. R. Co. v. Youngstown Boiler & Tank Co., supra. In the former, the negligent plaintiff settled its case with an injured laborer and then sued the city to recover the amount paid in settlement, basing its action on an indemnity agreement under which the city agreed to hold harmless the railroad from any and all damages to persons, including employees of the railroad, by reason of or in connection with the city's construction, maintenance or repair of a sewer. During construction of the sewer, the railroad negligently injured the workman. The court held the railroad entitled to indemnity since the injury occurred during construction of the sewer. It stated [71 F.2d 91]:

"To hold that the agreement indemnifies against the acts of appel-

484

lant and its agents only is to destroy its value."

In the latter case [64 F.2d 640], as in the case at bar, the contractor furnished labor and materials for the erection of a large steel tank upon the property of the railroad. During construction of the tank, an employee of the contractor was killed as a result of the railroad's negligence. Judgment for wrongful death having been recovered against the railroad, it sued the contractor upon a contract of indemnity which indemnified the railroad against loss by reason of " 'accident, injuries, damages or hurt, that may happen or occur upon or about such work.' " The court had no difficulty in holding that this agreement afforded protection against the negligent conduct of the railroad in question.

The case of Smoke v. Turner Const. Co., supra [54 F.Supp. 372], presents a fact situation quite analogous to that here and the same question arose on the third-party defendant's motion for summary judgment. An employee of a subcontractor was injured when, as a result of the defendant general contractor's negligence, an object fell on him. The indemnity agreement, in part, provided that the subcontractor assumes all responsibility for damages or injuries of any kind or nature to all persons, whether employees or otherwise, " 'growing out of or resulting from the execution of the work provided for in this contract, or occurring in connection therewith' ". In holding the indemnitor liable, the court stated:

"The magic words of the agreement fixing liability for an injured employee are 'occurring in connection therewith'. The work Struse (subcontractor) was to do in connection with the erection of the hospital was the connecting link between Smoke's injury and Turner's carelessness, for if Struse had not performed the work Smoke might not have been injured."

Furthermore, the court concluded:

"If this agreement is held not to apply to Turner's negligence, it means nothing, for Turner could be liable only for negligence. * * * That Struse's undertaking would be meaningless unless it applies to Turner's negligence serves to reenforce the conclusion that the injury in question was explicitly covered by the agreement."

The recent case of Ruddy v. New York Central Railroad, supra [124 F.Supp. 472], held the indemnity agreement in question covered liability resulting from plaintiff's own negligence. It provided to indemnify and hold harmless the railroad for " 'injury to persons * * * arising in whole or in part by reason of or in any way resulting from the presence * * * of structures * * * encroaching upon the aforesaid standard clearances' ". Although plaintiff's injuries were sustained as a result of the railroad's negligence, since a structure did encroach upon the standard clearances, indemnity, under the above provision, was held proper. By analogy, while General Motors was allegedly negligent, since plaintiff was an employee "used or employed on or in connection with the work" indemnity should likewise follow. In addition, the court in the Ruddy case stated:

"It may well be that the addition of the phrase 'regardless of the Railroad Company's negligence' would have been the ultimate 'unequivocal expression', but I cannot decide, in good conscience, that the lack of such phrase nullifies the particularized paragraph, and makes it mere surplusage and meaningless."

The court feels that the reasoning and holdings of the above cases are applicable here. The contract clearly indicates that the undertaking of Utley was, in part at least, to indemnify General Motors against responsibility for injuries to Utley's employees used on the job in question, regardless of whoever be at fault. Doubtless, more specific language could have been chosen, but this fact, to a certain extent, is true in every instance of draftsmanship and this argument cannot serve to detract from

the clear and unequivocal meaning of the words used. Ruddy v. New York Central Railroad Company, supra. Indeed, to hold that the phrase respecting employees used on the work provides for indemnification only when General Motors is without fault seemingly makes it meaningless, for it is difficult to conceive of an instance where an employee of Utley could hold General Motors liable except for the latter's negligent conduct. Be this as it may, the court is of the opinion that the contract does, by virtue of the language used, provide for indemnification in the instant situation.

That such undertaking was perhaps unwise and hazardous is not a persuasive argument against the obvious fact that Utley did assume such a liability. Smoke v. Turner Const. Co., supra.

Therefore, the motion of the third-party defendant to dismiss treated as a motion for summary judgment will be in all respects denied. An appropriate order may be presented.