SUMMER & Co., INC., Plaintiff, *v.* PHŒNIX INDEMNITY COMPANY, Defendant.

Supreme Court, Erie County, January 6, 1942.

*Kimball & Smith* [*Esmond D. Murphy* of counsel], for the plaintiff.

*Garono, Jaeckle & Kelly* [*Harry J. Kelly* of counsel], for the defendant.

HINKLEY, J. This action was regularly moved at a jury term of the court. At the conclusion of the testimony it was apparent

that there were no issues of fact or testimony from which different material inferences could be drawn. Counsel for each party thereupon moved for a direction of a verdict leaving to the court the determination of any questions of fact, if any should later appear. After more mature consideration and study of the briefs of counsel, it is clear that the decision of this case must rest alone upon the determination of questions of law in the application of undisputed facts to the interpretation of a public liability insurance policy.

Plaintiff as insured seeks to be reimbursed by defendant as insurer for moneys expended for attorneys' fees in the defense of several actions based upon claims which have been adjudicated groundless. Defendant declined to defend, claiming non-coverage under the policy.

Plaintiff is a junk dealer engaged in the purchase and sale of scrap metal. Plaintiff is not a building contractor or wrecker engaged in the construction, demolition or alteration of buildings, and no such coverage was included in the policy. The Genesee Building Company in Buffalo entered into a general contract with the Westinghouse Elevator Company to demolish and remove its old elevators and construct and install new ones. To that contract plaintiff was not a party, nor in any way interested, nor had plaintiff any contractual relations with the Genesee Building Company. Plaintiff, however, did contract with the Westinghouse Elevator Company to purchase steel arches after the latter company had removed them from the elevator shafts. Ordinarily the arches would have been removed to the junk yard of plaintiff in Lackawanna and there cut up for resale. But in order to remove them more advantageously, plaintiff's employee, one Welch, cut them on the premises into smaller pieces with a blow torch furnished to plaintiff's employee by the plaintiff. The employee was regularly employed by plaintiff on an hourly wage and received from plaintiff additional compensation for the use of a truck owned by the employee. His hourly wages were included in the estimate and adjustment of plaintiff's payroll upon which the premium upon the policy was determined.

Plaintiff's employee, after cutting and removing arches which the Westinghouse Elevator Company had taken from the elevator shafts, delivered them to the plaintiff's junk yard in Lackawanna. Plaintiff's employee Welch thereafter, at the request of the Westinghouse Elevator Company, and without the knowledge of plaintiff, engaged with the blow torch in the work of demolishing the old elevators. Plaintiff's regular employee, while so engaged, was not the employee of plaintiff but of the Westinghouse Elevator Company. It was claimed that while so engaged in the work of the Westinghouse

Elevator Company he caused a fire by reason of which claims were made and actions brought naming plaintiff as one of the defendants. The defendant insurance company disclaimed liability and refused to defend plaintiff, alleging at various times different reasons. Only two of these reasons deserve serious consideration. Subdivision 4 of section III, under heading " Statements," is as follows:

" (a) The locations of all Factories, Shops, Yards, Buildings, Premises or other workplaces of the Assured to which this Policy shall apply, by Town or City, with street and numbers, are as follows: 500 Ingham Ave., Lackawanna, New York.

" (b) In addition to coverage as respects such accidents upon the Assured's premises this Policy shall also cover as respects such accidents occurring elsewhere if caused by employes (who are members of the Assured's working force at said premises and are included in the premium computation provided for in Statement 5) while performing elsewhere their duties in said business operations."

Defendant disclaims liability and obligation to defend upon the ground that the accidental fire was not in a location coming within that clause. This contention is without force. For while plaintiff's regular employee was not working for plaintiff at the time of the fire, still the basis of the actions brought against plaintiff was that plaintiff's employee was performing his duties elsewhere in the business operations of plaintiff at the Genesee Building Company. The fact that the actions proved to be groundless because plaintiff's regular employee was not at the exact time of the fire doing plaintiff's work relieved defendant insurance company from liability but did not excuse it from defending the claims and actions.

Defendant insurance company also disclaimed and refused to defend or protect plaintiff upon the basis of an exclusion clause in the policy. This clause, contained in section I, headed " Agreements," subdivision 6, headed " Exclusions," is as follows: " This Policy does not cover as respects: * * * (4) accidents caused by reason of: * * * (c) the existence, maintenance or use of any watercraft or aircraft or of any hoisting device * * * or elevator or the well or hoistway of either."

The plaintiff did not in any way engage in the demolition, construction, repair or alteration of the elevators or well or hoistway of the Genesee Building Company. Had it done so, then, of course, the exclusion clause would have been effective. In the absence of proof that plaintiff had engaged in such work, the defendant insurance company's liability is not excluded, even though the plaintiff's employee was working in an elevator well and the fire occurred while he was so engaged. Here, as in many instances, the non-liability of the insurance company by reason of an exclusion clause

accentuates the obligation of the insurance company to protect and defend the assured against groundless claims. There is considerable confusion caused by the erroneous statements contained in some of the decisions that the liability of the insurance company and its obligation to defend depend upon the language of the complaint in an action brought against the assured. This is the wrong approach to the problem and is due in a great measure to the failure to keep in mind the distinction between liability and obligation to defend. The assured pays the premium not only for protection against damages recovered by reason of the negligence of the employees of assured, but also to escape harassment from groundless claims. This distinction is clearly pointed out in the following language in *U. S. Fidelity & Guaranty Co.* v. *Baldwin Motor Co.* ([Tex.] 34 S. W. [2d] 815): " The liability of the insurance company for failure to defend the Rogers case could not be tested by whether or not Rogers could or could not have recovered against the Baldwin Motor Company under the pleadings in that case or the proof of all or a portion of the facts alleged. The liability of the Baldwin Motor Company to Rogers is based upon the common-law liability for negligence. The insurance company's obligation to defend or pay a judgment is based upon the contractual liability assumed by its policy."

The law would be very clearly defined if the determination of the application of the exclusion clauses rested upon the conduct of the insured in respect thereto. Then if the assured fulfilled the terms of the policy himself, and the actual facts disclosed that the accident was within the terms of the policy, the duty of the insurance company to defend would be clear.

Under its policy the insurance company agrees " To defend, in the name and on behalf of the Assured, any claim or suit against the Assured, even if groundless, to recover damages on account of bodily injuries, including death resulting at any time therefrom, suffered or alleged to have been suffered by any person or persons not in the employ of the Assured, as the result of accidents occurring while the policy is in force, upon the Assured's premises designated in Statement 4 or elsewhere as provided in said statement by reason of the Assured's business operations, described in Statement 4 conducted on said premises."

The assured buys his protection from the negligence or wrongdoing of his servant while the latter is engaged in the master's work. Why should the assured, who has done no wrong, lose that protection because the servant has done some act which the policy forbids the assured from doing? If the insurance company declines to defend because the allegations of the complaint

against the assured bring the act of the servant within the exclusion clauses, what happens when upon the trial the plaintiff is permitted to amend his pleading in regard to the excluded act? The insurance company not being a party and not represented in court, could not object and the assured would not.

The authoritative decisions reach this conclusion but some only by circuitous routes bolstered up by the rather frequently applied principle that any ambiguity must be resolved against the insurance company which prepared the policy. The following decisions are illustrative of this point. In *Gerka* v. *Fidelity & Casualty Co.* (251 N. Y. 51, 56) we find this language: " The policy is intended to indemnify the assured against a loss suffered because of an injury to a third person by one of its vehicles. If such a loss is caused by a boy under sixteen years of age over whom the insured has no control, by starting a horse, the policy covers the loss. If the insured permits a boy under that age to drive a vehicle and have charge of it, and an injury results to a third person, the policy does not cover." In other words, if the insured does no wrong, the policy protects.

The case of *S. & E. Motor Hire Corp.* v. *New York Indemnity Co.* (255 N. Y. 69) involved the question of waiver. Yet (p. 71) the court emphasized the fact that the employer, having hired an employee in violation of the law, could not have protection under the policy. In the case of *Taylor* v. *United States Casualty Co.* (269 N. Y. 360) a father gave permission to his seventeen-year old son to drive the father's automobile. The son had a junior license permitted by statute, but exceeded his rights under that form of license. A majority of the court held that the father had done no wrong in granting permission to the son to drive and that the insurance company was not relieved under the exclusion clause because the son had done wrong. The minority of the court reached the anomalous conclusion that the father, who had done no wrong, should be penalized by losing the protection for which he paid a premium. That protection was insurance against loss and obligation to defend by reason of the wrongful and negligent action of his son. Thus the poor policyholder would, under the statute, be liable for the wrongful conduct of his son and the insurance company be relieved by the same wrongful conduct of the son.

In *Grand Union Co.* v. *General Accident, Fire & Life Assurance Corp.* (254 App. Div. 274; affd., 279 N. Y. 638) the employee of the assured was engaged in target practice in the basement of a grocery store. A bullet injured a pedestrian on the street. The court held that the wrongful act of the servant, which was beyond

the scope of his duties and without knowledge or wrong on the part of the assured, was within the terms of the policy. In *Floralbell Amusement Corp.* v. *Standard Surety & Casualty Co.* (256 App. Div. 221) an employee of the assured assaulted a boy in the theatre of the assured without the knowledge of the latter. The court held that the wrongful act of the servant, which was beyond the scope of his duties and without knowledge or wrong on the part of the assured, was within the terms of the policy.

Cases cited by defendant's counsel are clearly distinguished. In *Daniel* v. *State Farm Mutual Ins. Co.* (233 Mo. App. 1081; 130 S. W. [2d] 244) the father allowed his fifteen-year old son to drive in violation of the law. In *Fessenden School, Inc.*, v. *American Mutual Liability Ins. Co.* (289 Mass. 124; 193 N. E. 558) the policy covered workmen's compensation, and the action brought against the assured was based upon the relation of landlord and tenant boarder. In *U. S. Fidelity & Guaranty Co.* v. *Baldwin Motor Co. (supra)*, the alleged employee was held not to be an employee; that he was under the age of sixteen years and not covered by the policy. In *Mitzner* v. *Fidelity & Casualty Co.* (94 Ind. App. 362; 154 N. E. 881) the court came to the very opposite conclusion of the Court of Appeals of this State in *Gerka* v. *Fidelity & Casualty Co. (supra)*. In view of the striking similarity of the two cases, and the language of Judge HUBBS (p. 56), the two courts follow the same path and reach opposite conclusions. Of course the decision in this State must control.

In the case at bar the question is not one of liability but obligation to defend, as the claims have already been established as groundless; the insured was not at fault; the careless act of the employee of assured while beyond the scope of his work was committed upon premises within the coverage of the policy and while he was engaged in the business operations of the assured; the obligation of the insurance company to defend was clearly defined, even though the claims were groundless. The reasonable value of the attorney's services was stipulated upon the trial as $750, and plaintiff is entitled to judgment in that amount.