HOWARD J. HOLLINGSWORTH, JR., Plaintiff, v. THE CHRYSLER CORPORATION, a corporation of the State of Delaware, Defendant and Third Party Plaintiff, v. MAHONET-TROAST CONSTRUCTION COMPANY, a New Jersey Corporation, Third

Party Defendant and Fourth Party Plaintiff, v. NEWARK CONSTRUCTION COMPANY, INC., a Delaware Corporation, Fourth Party Defendants.

*(February* 25, 1965.)

CHRISTIE, J. sitting

*PRICKETT & PRICKETT,* for Mahoney-Troast Const. Co., fourth party plaintiff.

*EDMUND D. LYONS* of Morris, James, Hitchens & Williams, for Newark Const. Co., Inc., fourth party defendant.

Superior Court for New Castle County No. 234 Civil Action 1957.

CHRISTIE, Judge.

The fourth party defendant, Newark Construction Co., (hereinafter referred to as Newark) has moved for judgment on the pleadings as to the complaint filed against it by fourth party plaintiff, Mahoney-Troast Construction Co., (hereinafter referred to as Mahoney-Troast). That complaint is based on an indemnity clause in a contract between Mahoney-Troast, a general contractor and Newark, its subcontractor. Mahoney-Troast seeks reimbursement for counsel fees and other expenses incurred when Mahoney-Troast provided a defense to the tort claim brought by Hollingsworth, the plaintiff against chrysler, the defendant, the claim arising while Mahoney-Troast and Newark were working as contractors on Chrysler property.

The Chrysler Corporation contracted with Mahoney-Troast, as general contractor, to convert its plant in Newark, Delaware, from tank to automobile production. Mahoney-Troast in turn entered into a contract with Newark as a subcontractor to do some of the work. On May 9, 1956, while Newark was at work under the subcontract, an employee of Newark, Howard J. Hollingsworth, Jr., was injured when a truck which he was operating fell through a temporary bridge into a concrete pit.

Mr. Hollingsworth collected workmen's compensation from Newark or its carrier and sued Chrysler for damages, alleging negligence

on the part of Chrysler's employees in the preparation and placement of the bridge. Chrysler then filed a third party complaint against Mahoney-Troast based on indemnity agreements contained in its contract with Mahoney-Troast. Mahoney-Troast, in turn, brought a fourth party complaint against Newark based on a corresponding indemnity agreement in its subcontract with Newark.

In the trial of the tort claim, Chrysler was absolved of any negligence with regard to Mr. Hollingsworth's injury by a jury verdict in its favor. At Chrysler's request, and apparently without dispute as to whether it was its obligation to do so, Mahoney-Troast defended Chrysler in the main suit. Mahoney-Troast now seeks from Newark the $8,320. in counsel fees and expenses it has expended in successfully defending Chrysler as to the tort claim. The only remaining issue in the litigation concerns Mahoney-Troast's demand for these counsel fees and expenses under the indemnity agreement contained in its subcontract with Newark.

Newark says that it is not responsible for these fees and expenses, and contends that it did not agree to indemnify Chrysler or Mahoney-Troast for the consequences of their own negligent acts nor did it agree to defend them against claims based on their negligence. Mahoney—Troast contends that Newark did agree to indemnify the owner and general contractor for all injuries in connection with Newark's work even if caused by their own negligence and that there was an independent obligation to defend against all such claims even if they proved to be groundless.

The relevant clauses are a follows:

"The subcontractor agrees—

"(a)To be bound to the contractor by the terms of the agreements, general conditions, drawings and specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the owner."

The Subcontractor further agrees to indemnify and save harmless the Contractor against loss and expense by reason of the liability imposed by law upon the Contractor for damages because of bodily injuries, including death at any time resulting therefrom, sustained by any person or persons, and injury to or destruction of property caused by accident, due to any act or omission of the Subcontractor, his employees, or agents arising out of and during the prosecution of the work of the Subcontractor as contemplated under this agreement."

With reference to (a) above, the contractor, Mahoney-Troast had included an indemnification agreement in its contract with the owner, Chrysler which reads as follows:

"The Contractor shall be responsible for his work and every part thereof, and for all materials, tools, appliances and property of every description used in connection therewith. He shall specifically and distinctly assume and does so assume all risks of injury to property or persons used or employed on or in connection with the work, and of all damage or injury to any persons or property wherever located, resulting from any action or operation under the contract or in connection with the work, and undertakes and promises to protect and defend the Owner against all claims on account of any such damage or injury."

The indemnity clause contained in the contract between Mahoney—Troast and Newark covers only "an act or omission of the subcontractor, his employees, or agents" and clearly would not indemnify Chyrsler or Mahoney-Troast as to their own negligent acts. Mahoney-Troast, therefore, must rely on Newark's general agreement "to assume toward him (Mahoney-Troast) all of the obligations and responsibilities that he, by those documents, assumes toward the owner" (Chrysler). Thus, Mahoney-Troast's contention is based solely on the incorporation into its agreement with Newark of its indemnity agreement with Chrysler.

The basic question then is an oft recurring one: Do the provisions

of a particular indemnity agreement protect the indemnitee against a charge that he has himself been negligent?

Courts in nearly all jurisdictions which have faced this problem have applied the general rule that the indemnitor is not to be viewed as an insurer and have indicated that the indemnitee will not be protected against the consequences of his own negligence unless the agreement clearly and unequivocally requires it. 175 A.L.R. 8 (1948). While the parties to the agreement need not use any peculiar and technical formula to achieve this objective, they must use clear and unmistakable language. *Batson-Cook Co. v. Industrial Steel Erectors,* 257 F.2d 410 (5th Cir. 1958); Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173 (1907).

Some of the decisions are difficult to reconcile with those of other courts interpreting the same or similar language, but many courts have applied the general rule and still have found that the language used in the indemnity agreement does protect the indemnitee from the consequence of his own negligence. The following cases are illustrative: *Bentley v. Palmer House Co.,* 332 F.2d 107 (7th Cir. 1964); *Buffa v. General Motors Corp.,* 131 F.Supp. 478 (E.D. Mich. 1955); *Cozzi v. Owens Corning Fibre Glass Corp.,* 59 N.J.Super. 570, 158 A.2d 231 (1960) aff'd at 63 N.J.Super. 117, 164 A.2d 69 (1960); *Griffiths v. Henry Broderick, Inc.,* 27 Wash. 2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947).

While some of these cases state a clear basis for distinguishing between those agreements which encompass indemnitee's negligence in their coverage and those which do not, many simply state a result in short or long form. It is clear, however that Delaware Courts have looked with disfavor upon contracts to indemnify a person against his own negligence and that doubtful or ambiguous language is construed against such interpretation.

Delaware Courts early indicated that while express use of the word negligence is not required, the intention to immunize an indemnitee must be clear "for such immunity cannot rest upon a

presumption or strained construction of the provision." *Marshall v. Maryland D. & V. Ry.*, 1 W.W.Harr. 170, 173, 31 Del. 170, 112 A. 526, 527 (Super. Ct. 1921). See also *Pan Am. World Airways, Inc. v. United Aircraft Corp.*, 3 Storey 7, 53 Del. 7, 163 A. 2d 582 (1960) (where a Delaware Court applied Connecticut law), and *Delaware Power & Light Co. v. Mayor and Council of the City of Wilmington*, 200 A.2d 840 (Del. Super. Ct. 1964)

No Delaware decision has been called to my attention and I have found none where immunity to an indemnitee from the consequences of his own negligence has been found to have been included in an indemnity contract. There is, however, a United States District Court decision decided under Delaware law which interpreted a contract as including such immunity. There Judge Leahy stated:

"The Delaware law does not require that indemnity from one's own negligence be expressed in so many words, but it is sufficient if such intention appear from a fair construction of the instrument" *Smoke v. Turner Constr. Co.*, 54 F.Supp. 369, 371 (D.Del.1944).

In a later decision the same District Court stated that " * * * contracts of indemnity such as this are not favored either generally, 175, A.L.R. 8 and cases cited, and more particularly, in Delaware." citing, the Pan american case. *Altemus v. Pennsylvania R.R.*, 210 F Supp. 834, 835 (D.Del.1962).

It has been pointed out that if an indemnitee is to be immunized from his own negligence, such an intention must be unmistakably clear from the language of the agreement. I am of the opinion that such an intention is not unmistakably and unequivocally clear in the agreement between the parties at bar. While the area of activity covered by the agreement is clearly large, the contracts make no direct reference to the causes that are included in the indemnification. The real cause of any injury could be the negligent act of either the owner, the contractor, the subcontractor or a third party. Under all of the circumstances it is reasonable to interpret the reference to injuries resulting from "any action or operation under the contract

or in connection with the work" as a reference to injuries caused by Newark's action in pursuance of its contract and as excluding injuries caused by the action of others. I so hold. See in addition to the cases cited above; *Schroeder v. Gulf Ref. Co.,* 300 Pa. 405, 150 A. 665 (1930).

This conclusion alone, however, does not dispose of the remaining issue in this case because Mahoney-Troast contends that the contract contains a separate and independent promise to defend requiring Newark to pay for the defense of the tort claim even in the absence of liability.

It is clear that an unconditional promise to defend may impose a duty to defend within the coverage of the promise without regard to the suit's merit. It is also clear that a promise to defend may extend to matters not covered by a promise to indemnify. *City Poultry & Egg Co. Inc. v. Hawkeye Casualty Co.,* 297 Mich. 509, 298 N.W. 114 (1941); *Summer & Co. v. Phoenix Ind. Co.,* 177 Misc. 887, 32 N.Y.S. 2d 2 (Sup.1942); *Zeitz v. Zurich Gen Acc. Liab. Ins. Co.,* 165 Pa.Super. *295, 67 A.2d 742 (1949).*

*These propositions, however, do not assist Mahoney-Troast in this case since the tort suit brought by Hollingsworth is not within the scope of the indemnity agreement as to which Newark made its promise to defend.*

In this contract Newark assumed the risks "of all damage or injury to any persons or property * * * resulting from any action or operation under the contract." I have interpreted this clause as indemnifying Mahoney-Troast only as to actions taken by Newark under the contract. The separate agreement to defend covers the risks since by its own terms it relates only to "all claims on account of any *such* damage or injury" (emphasis added).

It is clear that Newark has two separate duties under the contract. It assumed specified risks, and it promised to defend claims (whether valid or not) which involved those specified risks. Since the contractual

language imposed two duties, such duties may be called independent.

However, Newark has neither a duty to assume the risk nor a duty to defend unless the claim is based on Newark's "action or operation under its contract". For Newark to be obligated under its contract to defend, the primary suit had to be based in fact or law on Newark's action.

Mahoney-Troast attempts to bring Hollingsworth's claim that Chrysler was negligent within the terms of the contract by pointing out that the bridge which collapsed had been constructed by, or under the supervision of, Newark's enployees and so the tort claim by Hollingsworth was in fact a suit by an employee of Newark based upon negligence of other employees of Newark. Mahoney-Troast contends that it is against just such negligence that it sought protection by the indemnity clause and the agreement to defend. The short answer to this argument: is that neither Mahoney-Troast nor Chrysler has ever faced a claim based on an allegation that Newark was negligent as to Hollingsworth and so the contract has never come into play.

In its argument Mahoney-Troast visualizes a nonexistent hypothetical suit which might have been filed on existing facts. Hollingsworth might have endeavored to recover from Mahoney-Troast or Chrysler on account of the alleged negligence of Newark and if he had done so both the indemnity clause and agreement to defend would have found application as to that claim even though such suit might have been without legal basis. Hollingsworth brought no such suit.

In support of its arguments on this point Mahoney-Troast cites insurance cases from other jurisdictions where insurance carriers were not permitted to avoid their obligations to the insured by blind reliance on the incomplete or erroneous allegations made by an injured party against the insured. *Hardware Mut. Cas. Co. v. Hilderbrandt*, 119 F.2d 291 (10th Cir. 1941); *Loftin v. United States Fire Ins. Co.*, 106 Ga. App. 287, 127 S.E.2d 53 (1962); *American Motorists Ins. Co. v. Southwestern Greyhound Lines, Inc.*, 283 F.2d 648 (10th Cir. 1960).

There is a basic difference between the potential liability in the insurance cases cited by Mahoney-Troast and the potential liability under the indemnity agreement before the court. In the cited insurance cases, a determination of the responsibility of the carrier was based on an examination of the carrier's duty when viewed in the light of facts known to, or easily ascertainable by, the insurer.

In the case at bar, the facts known to all parties precluded any recovery in tort by Hollingsworth based on Newark's negligence. Not only was Newark's negligence not alleged as the basis for recovery, it would not have formed a basis for recovery had it been alleged, for Hollingsworth's exclusive remedy as an employee of Newark for any negligence on his employer's part was workmen's compensation. 19 *Del. Code* Sec. 2304.

Promises to defend in insurance contract have been interpreted as requiring the insurance carrier to defend suits which are within the contract's scope under the facts as alleged even though the suit has no merit and as requiring the carrier to defend suits which are not within the contract's scope under the facts as alleged but which are within the contract under the actual facts; but in no case have the courts gone so far as to require the carrier to defend a suit where, under the actual or alleged facts, no claim within the coverage of the agreement to defend was ever asserted, and where no such claim could have been successfully asserted under the law.

If a subcontractor is to be required to provide a defense for an owner in a suit not covered by the indemnity agreement because a claim covered by the agreement could have been made, albeit unsuccessfully, that agreement must indicate such a responsibility more clearly than does the contract under scrutiny.

I find that the indemnity agreement and the agreement to defend imposed duties on Newark only as to suits where Newark's action under the subcontract is alleged as a basis of liability (whether such allegation was well founded in fact or not) and as to suits where

Newark's action under the subcontract (whether alleged or not) might legally form a factual basis for recovery. Since no part of the Hollingsworth tort claim against Chrysler falls within either the indemnity agreement or the agreement to defend, Newark has no duty to reimburse Mahoney-Troast or Chrysler for any expenses they may have incurred.

Under Rule 12(c), *Del. C.* Ann. Newark's motion for judgment on the pleadings has become a motion for summary judgement by reference to the record. Such motion is granted.

It is so ordered.