## SMOKE v. TURNER CONST. CO. (C. O. STRUSE & SONS, Third-Party Defendant).

### Civil Action No. 232.

District Court, D. Delaware.

Feb. 25, 1944.

**I. Indemnity** ⚸8

William Prickett, of Wilmington, Del., for Turner Const. Co., third-party plaintiff.

H. Albert Young, of Wilmington, Del., for C. O. Struse & Sons, third-party defendant.

LEAHY, District Judge.

This action was begun in the Superior Court of Delaware and removed by defendant Turner Construction Company, a New York corporation. Smoke's original declaration against Turner sought to recover damages in the amount of $8720 for personal injuries. After removal, Turner filed a third party complaint [1] against C. O. Struse and Sons, a Pennsylvania corporation, who appeared and moved to strike paragraph 10(a) of the third party com-

---

[1] This procedure under Federal Rules of Civil Procedure, rule 14(a), 28 U.S. C.A. following section 723c, was approved in Watkins v. Baltimore & O. R. Co., D. C., 29 F.Supp. 700.

plaint and for summary judgment against Turner on the ground that the third party complaint did not state a cause of action. Both these motions raise the same question and will be considered together.

The admitted facts taken from the pleadings disclose the following material circumstances. Turner was the general contractor for the construction of the new Delaware Hospital in Wilmington. Struse was subcontractor for brick, terra cotta and other masonry work under an agreement between Turner and Struse dated August 17, 1939, the pertinent portion of which for the purposes of this case is set forth in the margin.[2] Smoke was a mortar mixer employed by Struse. While Smoke was working on the first floor, as a result of Turner's negligence, some hard object fell on him from one of the floors above. Smoke suffered personal injuries for which Struse paid him upwards of $1600 under the Delaware Workmen's Compensation Act. Rev. Code 1935, § 6071 et seq.

After Struse completed its work at the hospital, it gave Turner "A Release and Indemnity Agreement" dated April 16, 1941. It recited that Struse as subcontractor had received all sums due it for work, labor and materials furnished on the project. Another portion of the writing provided: "The Subcontractor [Struse] further agrees to indemnify and hold harmless the Turner Construction Company and Delaware Hospital, or either of them, for loss, expense, damage or injury as a result of claims arising out of or in connection with the execution of the work provided for in said contract, including any claim made by any laborer, contractor or material man that may have furnished labor or material directly or indirectly to the Subcontractor or by reason of any action brought or judgment recovered by such laborer, contractor or material man."

Struse brings this action as subrogee and in the name of Smoke under the applicable provision of the Delaware Workmen's Compensation Act.[3] The complaint charges numerous acts of negligence on Turner's part.

Assuming Turner's negligence was the cause of Smoke's injuries, is Turner entitled to look to Struse to indemnify it in

[2] "The Subcontractor [Struse] hereby assumes entire responsibility and liability in and for any and all damages or injury of any kind or nature whatever to all persons, whether employees or otherwise, and to all property, growing out of or resulting from the execution of the work provided for in this contract, or occurring in connection therewith, and agrees to indemnify and save harmless, the Turner Construction Company, its agents, servants and employees from and against any and all loss, expense, including attorney's fees, damages or injury growing out of or resulting from or occurring in connection with the execution of the work herein provided for or occurring in connection with or resulting from the use by the Subcontractor, his agents or employees, of any materials, tools, implements, appliances, scaffolding, ways, works or machinery or other property of the Turner Construction Company, whether the same arise under the common law or the so-called Workmen's Compensation Law (which may be in effect in the locality in which the work is situated) or otherwise. In the event of any such loss, expense, damage or injury, or if any claim or demand for such damages is made against the Turner Construction Company, its agents, servants or employees, the Turner Construction Company may withhold from any payment due or hereafter to become due to the Subcontractor under the terms of this contract, an amount sufficient in its judgment to protect and indemnify it from any and all such claims, expenses, including attorney's fees, loss, damage or injury, or the Turner Construction Company, in its discretion, may require the Subcontractor to furnish a surety bond satisfactory to the Turner Construction Company, guaranteeing such protection, which bond shall be furnished by the Subcontractor within five days after written demand has been made therefor."

[3] Delaware Code of 1935, Sec. 6108 provides as follows:

"Whenever an injury for which compensation is payable under this chapter shall have been sustained under circumstances creating in some other person than the employer, a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this chapter or obtain damages from, or proceed at law against such other person to recover damages, but he shall not proceed against both; and if compensation is awarded under this chapter, the employer having paid the compensation or having become liable therefor, shall be subrogated to the rights of the injured employee, or of his dependents to recover damages against such third person, and may recover in his own name or that of the injured employee from the other person in whom legal lia-

view of Struse's undertakings in the agreements of August 17, 1939, and April 16, 1941? The answer to this question depends on what construction is given the two agreements between the parties. These agreements will be discussed in their inverse chronological order.

[redacted] 1. Indemnity Agreement of April 16, 1941. This agreement is not relevant to the solution of the present problem for it is apparent from the language used that the parties did not intend to contract with respect to personal injuries to Struse's employees caused by Turner's negligence. The dominant purpose of the agreement is to indemnify "for loss * * * as a result of claims arising out of or in connection with the execution of the work provided for in said contract, including any claim made by any laborer, contractor or material man that may have furnished labor or material directly or indirectly to the Subcontractor or by reason of any action brought or judgment recovered by such laborer, contractor or material man." This is a special indemnity with respect to loss occasioned by faulty or defective workmanship, material or labor claims. It is something in addition to the safeguards provided for in the original contract and has nothing to do with personal injuries caused by Turner's negligence. There are several operative facts which support this conclusion. First, the particular agreement is dated subsequent to the completion of the work by Struse and, what is more significant, subsequent to the commencement of the suit by Smoke against Turner for personal injuries. Obviously, the parties would not have rationally intended to contract with reference to the subject matter embraced within that litigation without making some mention of it, because at the time of the execution of the agreement, the claim for substantial damages in the amount of $8720 had, of course, been made against Turner by the filing of Smoke's suit in the Superior Court in Delaware. Second, under the contract of August 17, 1939, two alternative safeguards were always available to Turner. It could have either withheld from its payments to Struse an amount which it thought sufficient to protect it from Smoke's claim of $8720 or it could have required Struse to furnish a surety bond to answer for any judgment Smoke might obtain in his personal injury action. Since Turner required neither safeguard, it is most unlikely that the parties would have intended the present matter to be governed by the much weaker indemnity contained in the April 16, 1941 agreement. The present problem must be determined without regard to this agreement.

[redacted] 2. Agreement of August 17, 1939. The problem of liability involved is one of substance. Delaware law applies. Before construing the agreement, the validity of indemnity agreements against the results of one's own negligence must be considered. Delaware holds such agreements valid. Marshall v. Maryland D. & V. Railway Co., 1 W.W.Harr. 170, 112 A. 526. This is also the general rule. National Transit Co. v. Davis, 3 Cir., 6 F.2d 729, certiorari denied 269 U.S. 579, 46 S.Ct. 104, 70 L.Ed. 422; Santa Fé Railway Co. v. Grant Bros. Const. Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787. The remaining question in the case at bar then is whether the intention to indemnify from the results of the indemnitee's own negligence appears from a fair construction of the agreement sub judice.

[redacted] The Delaware law does not require that indemnity from one's own negligence be expressed in so many words, but it is sufficient if such intention appear from a fair construction of the instrument. Marshall v. Maryland D. & V. Railway Co., supra. There is, however, no Delaware authority which determines whether the specific language of this agreement is sufficiently broad to cover the injury to Smoke. But, I think Delaware would, under such circumstances, examine the general authority on this point and accept that authority as the law of Delaware. Geller v. Transamerica Corp., D.C.Del., 53 F.Supp. 625; Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 125 F.2d 820; Moyer v. Van-Dye-Way Corporation, 3 Cir., 126 F.2d 339.

[redacted] The language used in this agreement is sufficiently broad to cover Smoke's accident and injury. The language is comprehensive and inclusive, i. e., "The Subcontractor hereby assumes entire responsibility and liability in and for any and all damages

bility for damages exists, the indemnity paid or payable to the injured employee. Any recovery against such third person in excess of the compensation theretofore paid and thereafter payable by the employer (less the cost of securing and collecting same) shall be paid forthwith when collected, to the employee or the dependents."

or injury of any kind or nature whatever to all persons, whether employees or otherwise * * * growing out of or resulting from the execution of the work provided for in this contract, or occurring in connection therewith * * *". Struse's undertaking explicitly covers the present matter for the suit is one for "damages" resulting from personal "injury" and Smoke is an "employee". The magic words of the agreement fixing liability for an injured employee are "occurring in connection therewith". The work Struse was to do in connection with the erection of the hospital was the connecting link between Smoke's injury and Turner's carelessness, for if Struse had not performed the work Smoke might not have been injured.

The phrase "in connection with" was construed in Kokusai Kisen Kabushiki Kaisha v. Columbia Stevedoring Co., Inc., D.C., 23 F.Supp. 403, 405, affirmed, 2 Cir., 100 F.2d 1016. There the plaintiff was the owner of a ship and the defendant was a stevedore. The two agreed that the stevedore should unload from one of the plaintiff's ships a cargo consigned to New York and should "be responsible for any loss, personal injury, death and/or other damage that may be done to or suffered by workmen or other persons in connection with the operations to be carried out pursuant to this contract and shall indemnify and save harmless * * *" the owner. Crasto, a longshoreman employed by the stevedore, was hurt through the negligence of the owner of the ship, when part of the cargo (consigned not to New York but to Baltimore and with which the stevedore had nothing to do) fell on him. Crasto brought suit against Kokusai and recovered a judgment. Kokusai then brought its action under the indemnity agreement. The court, rejecting the argument that the injury was not within the scope of the agreement, held that the phrase "in connection with" should be given a broad interpretation, and that, as Crasto's injuries were suffered in connection with the work which defendant was to do, the stevedore should indemnify Kokusai.[4]

If this agreement is held not to apply to

Turner's negligence, it means nothing, for Turner could be liable only for negligence. Santa Fé Railway Co. v. Grant Bros. Const. Co., 228 U.S. 177, 33 S.Ct. 474, 478, 57 L. Ed. 787, is an interesting case in this connection. In that case the railroad was constructing an extension of its line. Some of the work was being done by one Grant, under an agreement by which the railroad transported men and materials to the end of the track upon the condition that "all risk of loss or damage to be borne by the contractor * * * All movements of goods at less than tariff rates to be at consignee's risk of loss and damage." Several cars containing Grant's equipment were hauled by the railroad to a place near the construction site and put on a side track. While there, they caught fire and burned; the only possible source of the fire was one of the railroad's trains which passed a few hours before the fire. Grant brought suit against the railroad and was met with the defense of the indemnity provisions of the agreement. In holding the defense good, the court said that the language used was sufficient to relieve the railroad from the effects of its own negligence. In reaching this result, the court noticed that the railroad would have been liable to the workmen only for negligence; that, therefore, the parties must have meant to exonerate the railroad from liability for its own negligence since liability could arise only from its negligence.[5] The same reasoning applies, mutatis mutandis, to the present situation. That Struse's undertaking would be meaningless unless it applies to Turner's negligence serves to reenforce the conclusion that the injury in question was explicitly covered by the agreement.

Struse strenuously argues that a construction that its undertaking applies to Turner's negligence is unnatural for it would mean that it as a small subcontractor on the construction of one of the country's larger modern hospitals would assume liability out of all proportion to the value of its contract. It may well be that this was, in truth, an unwise undertaking for Struse to assume, but that circumstance

---

[4] For additional analogous cases, see Standard Accident Insurance Co. v. National Fire Proofing Co., 39 Ohio App. 1, 176 N.E. 591; Baltimore & O. Railroad Co. v. Youngstown Boiler & Tank Co., 6 Cir., 64 F.2d 638; Ortolano v. U-Dryvit Auto Rental Co., 296 Mass. 439,

6 N.E.2d 346; Clarke v. Ames, 267 Mass. 44, 165 N.E. 696.

[5] Accord, National Transit Co. v. Davis, 3 Cir., 6 F.2d 729; Ringling Bros.-Barnum & Bailey Combined Shows, Inc., v. Olvera, 9 Cir., 119 F.2d 584.

alone is not a persuasive argument against the bald fact that it did assume such a liability.

Struse's motions to dismiss the third party complaint or for summary judgment are without merit and are accordingly denied.