The WILMINGTON HOUSING AUTHORI-
TY, a corporate body organized and exist-
ing pursuant to Chapter 160, Revised Code
of Delaware, 1935, Defendant Below, Ap-
pellant,

v.

Hazel Lynch WILLIAMSON, as next friend
of David Robert Williamson, and Hazel
Lynch Williamson, Individually, Plaintiffs
Below, Appellees.

Supreme Court of Delaware.

March 16, 1967.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Thomas Herlihy, Jr., and Morris Cohen, Wilmington, for appellant.

Vincent A. Theisen, of Theisen & Lank, Wilmington, for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

■ This is an appeal in a personal injury action from a judgment for the plaintiffs taken by Wilmington Housing Authority (hereafter Authority), one of the co-defendants.* The causᴗ was before us previously as an appeal from the grant of summary judgment for the Authority. We reversed and sent the cause back for trial. Williamson v. Wilmington Housing Authority, Del., 208 A.2d 304.

The plaintiffs in the case are a minor, aged four years at the time of the accident, suing by his next friend, and the minor's mother, suing to recover past and future medical expenses. The minor lost his right hand and foot and was awarded damages of $200,000. The mother was awarded damages of $50,000 but accepted a remittitur

---

* The co-defendant, Pennsylvania Railroad Company, originally noticed an appeal from the judgment, but later voluntarily dismissed it. The judgment, therefore, is final as to it. The jury had apportioned liability between the two defendants on a fifty-fifty basis.

of $15,000 to avoid the award of a new trial.

The Authority urges that the denial of its motion for judgment notwithstanding the verdict was error because,

(1) There was no evidence of a dangerous condition on its premises which caused the injury;

(2) That a release provision in the lease agreement between it and the adult plaintiff bars any recovery by her;

(3) That the doctrine of sovereign immunity bars the claims of both plaintiffs in whole, or in part, by reason of 18 Del. C. § 516.

In the alternative, the Authority urges that a new trial should be directed because,

(1) The admission of evidence of a prior fall by a different child was prejudicial;

(2) The admission into evidence of average lifetime earnings was prejudicial;

(3) The verdict in favor of the adult plaintiff is excessive as a matter of law;

(4) The verdict in favor of the minor plaintiff is excessive as a matter of law.

We take up for consideration the various matters presented to us in the order in which they have been stated.

*The contention that there was no evidence of a dangerous condition on the Authority's premises.*

Briefly stated, the theory of the plaintiff's case is that the Authority knowingly permitted a path from a play area for children on its premises leading to a steep and rough descent to railroad tracks to remain unfenced; that this was a dangerous condition, and that this was a proximate cause of the injuries.

The nature of the premises are fully set out in Williamson v. Wilmington Housing Authority, supra, and in the interest of brevity will not be repeated here. The key circumstance in the matter is an apparent path between shrubbery commencing on the Authority's premises and running a short distance to the railroad right-of-way at which point it descends precipitously to the railroad tracks. In the first appeal we held that the question of whether or not this condition was dangerous presented a proper jury question, and sent the cause back for trial. Quite obviously, the jury found the condition to be dangerous.

The Authority, however, argues that this does not dispose of the matter because there is no evidence that the dangerous condition had any causal connection with the minor's injuries. Pointed to is the statement in our prior opinion, at the summary judgment stage, that it was uncontroverted that the minor slipped and fell down the path and rolled under the approaching train. It is argued that there is no evidence whatsoever as to this and, hence, no causal connection between the accident and the path has been established.

The plaintiffs offered the testimony of two witnesses, husband and wife, who lived next to the home of the plaintiffs. These witnesses testified that at the time in question they were looking at the minor and a friend of his playing about the area of the beginning of the path where it passed through the shrubbery. They had been watching for some minutes.

The game the children were playing consisted of moving along the path through the shrubbery, waving at passing trains, and then darting back to hide behind the shrubbery. Both witnesses testified they kept the children under constant observation except for momentary lapses when they would turn their eyes aside.

Both witnesses also testified that just preceding the accident they saw the minor standing in the path when their attention was diverted for a few seconds, and when they looked back the minor had disap-

peared and his companion was calling something back to them. Neither witness was able to state whether or not the minor walked, ran, slipped, jumped or was pushed down the embankment by his companion. Both witnesses were positive, however, that at one moment they saw the minor standing in the path and that one or two seconds later he had disappeared from view.

One of the witnesses testified that he ran to the bank and looked down and saw the minor crawling back up the slope. He, by that time, had suffered his injuries.

The Authority argues, citing Ciociola v. Delaware Coca-Cola Bottling Co., 3 Storey 477, 172 A.2d 252, that this evidence is insufficient to make the path an item of significance with respect to the injuries of the minor. The argument is that when a conclusion of negligence is to be inferred from known facts, those facts must be such as to permit as the only reasonable conclusion that of negligence.

█ If the only evidence was the physical characteristics of the path and the minor's proximity to it, the Authority's argument would have force. But there are additional circumstances at bar. The activity of the two children around the edge of the steep incline; the fact that the incline was slippery due to wetness and, above all, the very short time which elapsed from the time the minor disappeared and when he was seen trying to crawl back up the path after having been under the train, all point to but one reasonable inference. That inference is that he slipped at the top of the wet incline and fell headlong down it, winding up under the wheels of the train. This, coupled with the dangerous nature of the path, adequately supports the jury's conclusion of negligence on the part of the Authority.

### The defense of release.

The adult plaintiff entered into a lease with the Authority for the occupancy of 759 Townsend Place, a dwelling located in the Authority's housing project. At the time the adult plaintiff applied for housing, she signed the usual lease prepared by the Authority.

This lease, which she testified she did not read, contained a provision by which she agreed to release the Authority "from liability for any injury to the tenant or the members of his household, resulting from any cause whatsoever," except for injury resulting from the willful acts of the Authority's employees.

Upon the basis of this release provision, the Authority argues that the claim of the adult plaintiff for medical expenses caused by the injury to her son has been barred. No defense based upon the release provision is asserted with respect to the claim for damages by the minor plaintiff.

The plaintiff argues that the release provision is null and void since the Authority engages in a public purpose, viz., the furnishing of low-cost housing. Under this circumstance, it is argued, public policy forbids that such a corporation contract for immunity from negligent injury caused by its employees in performing the public service for which the corporation was formed. Cited in support of the argument are Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 145 So.2d 527, and Restatement of Contracts, § 575. To the contrary, the Authority relies upon Marshall v. Maryland D. & V. Ry. Co., 1 W.W.Harr. 170, 112 A. 526; Pan American World Airways, Inc. v. United Aircraft Corp., 3 Storey 7, 163 A.2d 582, and Smoke v. Turner Construction Co., D.C., 54 F.Supp. 369.

█ We do not reach the question because we think it clear that, assuming the validity of the release provision, nevertheless its effect must be confined to the physical premises actually leased to the adult plaintiff. This conclusion flows from the general rule that contracts to relieve one from the consequences of his own negligence are not favored in the law and, if possible, will be construed not to confer

immunity from liability. We recognized this rule as being the law of Delaware in Pan American v. United Aircraft Corp., supra. If such is the rule with respect to contracts between parties not performing a public service, it applies even more forcibly to contracts between parties, one of whom is charged by law with the performance of a public service. Prosser on Torts (3rd Ed.), p. 456, et seq.

■ Since the minor plaintiff's injuries, creating the medical expenses for which the adult plaintiff seeks damages, did not occur on the premises leased, it follows that the release provision does not bar recovery.

### The defense of sovereign immunity.

The Authority argues that it is a state agency and, thus, is entitled to raise the defense of absolute immunity to suit, either in tort or contract. The plaintiffs, to the contrary, argue that the Authority is either a municipal corporation or a corporate entity responsible in damages for the torts of its employees. If it is a municipal corporation, say the plaintiffs, the Authority is liable for this particular tort because it was committed in the Authority's proprietary capacity rather than its governmental capacity.

■ The doctrine of sovereign immunity to suit is written into the Constitution of Delaware by Article I, § 8, Del. C.Ann. It is an absolute bar to all suits against the State unless by legislative act the General Assembly has waived the immunity. Shellhorn & Hill, Inc. v. State, Del., 187 A.2d 71. Sovereign immunity is also available to the counties of the State, as state agencies, as a defense in all actions brought against them. Carter v. Wilds, 8 Houst. 14, 31 A. 715. And in Banks v. Downing, 7 Terry 127, 78 A.2d 865, the Public Building Commission charged with maintaining the County Court House in New Castle County was held to be a state agency and, thus, immune from

suit. We think under our authorities, as well as many in our sister states, the State's absolute immunity from suit, unless waived by the General Assembly, extends to all state agencies as such.

■ With respect to municipal corporations, however, a somewhat different situation exists. Such corporations, to some extent at least, are state agencies performing governmental functions and, as such, are immune from suit in tort, but at the same time they are public corporate bodies performing proprietary functions with respect to which they are liable in tort. Flait v. Mayor and Council of Wilmington, 9 Terry 89, 97 A.2d 545. The distinctions appear illogical but, nevertheless, they exist in our law as a result of a long line of decisions.

The first question to be determined, accordingly, is precisely, What is the Authority—state agency or municipal corporation? A local Housing Authority is created under 31 Del.C. § 4303, following a determination by the State Board of Housing, a state agency created by 31 Del.C., Ch. 41, of the need for such local Housing Authority. The purpose for which such Authorities are created is to engage in low-rent housing and slum-clearance projects which, by 31 Del.C. § 4302, are declared to be "public objects essential to the public interest."

Rather extensive powers are conferred upon an Authority. For example, it is given the power to acquire property, to remove substandard conditions, to construct facilities, to borrow money, and to sue and be sued. See 31 Del.C. § 4307. Despite this broad grant of power to local Authorities, however, they remain under the Supervision of the State Board of Housing to a certain extent by reason of 31 Del.C. §§ 4314, 4315 and 4316.

The sole connection any municipality has with an Authority is participating with the Governor pursuant to 31 Del.C. § 4303, in the selection of the Authority's Com-

missioners, and the subsequent filling of vacancies. Following their appointment, however, the Commissioners act independently of any control (31 Del.C. § 4305) except for the supervisory power of the State Board of Housing.

We think the Authority before us is a state agency and not a municipal corporation. Traditionally, "municipal corporations" have been confined to incorporated cities, villages, or towns having limited and local powers of legislation and self-government. 1 McQuillen, Municipal Corporations, § 2.07. In Downs v. Commissioners of Town of Smyrna, 2 Penn. 132, 45 A. 717, a municipal corporation was defined as a body corporate and politic created to assist in the civil government of the state, with limited delegated authority to run the local affairs of a city, town or district. See, also, City of Wilmington v. Ewing, 2 Penn. 66, 43 A. 305, and Coyle v. McIntire, 7 Houst. 44, 30 A. 728.

The Authority is described by law as "a body both corporate and politic, exercising public powers." It is nowhere described as a "municipal corporation." The terms "public corporate body" or "public corporation" are generic; they describe any corporate instrumentality created by the State for public purposes and with the object of administering a portion of the powers of the State. 1 McQuillen, Municipal Corporations, § 2.03. Although a municipal corporation is a public corporation, not all public corporations are municipal corporations. Coyle v. Gray, 7 Houst. 44, 30 A. 728, 731. We think it clear that the Authority before us is a state agency created to discharge a public object essential to the public interest. As such, it may raise the defense of sovereign immunity to suit unless that defense has been waived by act of the General Assembly.

We think there has been an effective waiver by the General Assembly of the Authority's immunity to suit. We are of this opinion for several reasons. It seems reasonable to us to conclude that the selection by the General Assembly of an independent corporate form to accomplish the public purpose of low-cost housing is an indication that it was intended that it be treated as any private corporation, uncloaked with sovereign immunity to suit. See Ryan v. Boston Housing Authority, 322 Mass. 299, 77 N.E.2d 399; McCabe v. New Jersey Turnpike Authority, 35 N.J. 26, 170 A.2d 810; Eastern Motor Express, Inc. v. Espenshade, D.C., 138 F.Supp. 426; Linger v. Pennsylvania Turnpike Comm., 158 F. Supp. 900.

Also, by 31 Del.C. § 4307(a) (5), the Authority was given the power "to sue and be sued." In other jurisdictions, the conferring of such a power upon a state agency is considered as a waiver of immunity in a contract action, but there is a difference of opinion as to whether it amounts to a waiver in a tort action. See Note, 74 Harv. L.R. 714.

We think it illogical to find in the conferred power a waiver as to contract, but not as to tort. The General Assembly made no effort to narrow the grant of power. Its literal meaning constitutes a complete waiver of immunity and, in view of the recognized hardship resulting from the defense of sovereign immunity, we see no reason to perpetuate the hardship by a strained construction of the language of the grant. Our conclusion in this respect finds support in other jurisdictions. See Keifer & Keifer v. R. F. C., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724; Knowles v. Housing Authority of City of Columbus, 212 Ga. 729, 95 S.E.2d 659, 61 A.L.R.2d 1241; Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 14 So.2d 527; Hope Natural Gas Co. v. West Virginia Turnpike Comm., 143 W.Va. 913, 105 S.E. 2d 630.

We recognize, of course, that there is substantial authority to the contrary, e. g.,

Rader v. Pennsylvania Turnpike Comm., 407 Pa. 609, 182 A.2d 199, but we find it unpersuasive.

There is a final indication that the General Assembly intended a complete waiver of immunity with respect to Housing Authorities in the grant by 31 Del.C. § 4307 (a) (3) of power "to insure or provide for the insurance of the property or operation of the authority against such risks as the authority may deem advisable." If immunity to suit had been intended by the General Assembly, what purpose does the grant of authority to insure its operation serve?

We think our conclusion that there has been a legislative waiver of immunity as to Housing Authorities is not in conflict with Eastern Union Co. of Del. v. Moffat Tunnel Improvement Dist., 6 W.W.Harr. 488, 178 A. 864. This case held that a "sue and defend" clause did not constitute a waiver of immunity. The case involved a municipal corporation and the "sue and defend" clause was construed in the light of the historical doctrine of partial municipal immunity. As we have pointed out by reason of past precedents there is an illogical distinction made in the law between state agencies and municipal corporations.

### The defense based upon 18 Del.C. § 516.

18 Del.C. § 516, requires that every insurance policy covering persons employed by, or property belonging to, the State shall contain an agreement by the insuring company that it waives the defense of sovereignty.

Since the Authority in fact is insured against tort claims but in an amount less than its share of the judgment before us, it is argued that immunity has been waived only to the extent of the amount of coverage.

We do not have to consider the point by reason of our conclusion that there has been a total waiver of immunity.

### The motion for judgment notwithstanding the verdict.

By reason of the foregoing, we affirm the denial of the Authority's motion for judgment notwithstanding the verdict. The remaining points are urged by the Authority as reasons for reversal of the judgment and for remand of the cause for a new trial.

### The admission of evidence of a prior fall by a different child.

■ In the course of the trial two of plaintiffs' witnesses testified that several months before the accident their two-year-old daughter had fallen down the embankment at or about the same location where the minor plaintiff fell, and that this prior fall had been brought to the attention of the Authority's employees. The Authority argues that this testimony was inadmissible and prejudicial to an extent to require a new trial.

We think, however, to the contrary. The injuries in this case were caused by a dangerous and defective condition on the premises. When such is the case, evidence of prior accidents is admissible. Jewell v. Pennsylvania Railroad Company, Del., 183 A.2d 193.

### The evidence of average lifetime earnings.

Plaintiffs offered in evidence the minor plaintiff's I.Q. and the results of other intelligence and performance tests which were interpreted as showing that he would have been able to graduate from college but for his injuries. Plaintiffs then called as a witness an actuary who testified as to the average difference in earnings among students of various degrees of academic achievement as a guide to the jury in determining future loss of earnings by reason of the injuries.

■ To assess damages for future loss of earnings of a four-year-old child presents a jury with a problem which can be solved only by the use of common sense.

Loss of future earnings of such a person cannot be estimated with any degree of accuracy. The jury must do the best it can to estimate an amount and in so doing, it may take into account differences in average earnings. Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400; Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041, 15 A.L.R.2d 407; Grayson v. Irvmar Realty Corp., 7 A.D.2d 436, 184 N.Y.S.2d 33.

It was not error to admit into evidence the statistical information as to average lifetime earnings.

### The excessiveness of the verdict for the adult plaintiff.

■ The claim of the adult plaintiff was for past medical expenses and for future medical expenses until the minor plaintiff reaches the age of twenty-one. A verdict was returned in the amount of $50,000 which by remittitur was reduced to $35,000.

Medical expenses arising from twenty operations already incurred amount to approximately $25,000. The treating physicians of the minor plaintiff testified that in order to wear a regular leg prosthesis he will require several future operations in the nature of full thickness skin grafts. The testimony made it quite plain that the required treatment of the minor plaintiff is by no means over.

Under the circumstances, an allowance of approximately $10,000 for this future treatment does not seem excessive. We therefore find no error in the award of the remittitur rather than ordering a new trial as the Authority contends.

### The excessiveness of the verdict for the minor plaintiff.

■ A verdict was returned for the four-year-old minor plaintiff in the amount of $200,000. The Authority contends this amount is so excessive as to require the grant of a new trial.

Damages were allowed for the loss of an arm and a leg, pain and suffering from the injury and from twenty operations, and for the loss of future earnings. Under the circumstances, we cannot say that the amount allowed is excessive.

The judgment below is affirmed.