**Mildred L. SANNIT, Plaintiff,**

v.

**Lester AARONS, Defendant.**

**Civ. A. No. 3459.**

United States District Court

D. Delaware.

March 13, 1969.

F. Alton Tybout, Wilmington, Del., for plaintiff.

Alfred M. Isaacs, Wilmington, Del., for defendant.

## OPINION

STEEL, District Judge.

This is an action by a lessor against her lessee for damages allegedly caused by a fire resulting from the lessee's negligence. Plaintiff is a resident of Pennsylvania, and defendant is a resident of Delaware. Jurisdiction exists because of diversity of citizenship of the parties and the amount in controversy being in excess of $10,000, exclusive of interest and costs.

Defendant has moved for summary judgment. The legal issue to be resolved turns on construction of the lease. No genuine issue exists as to any material fact.

Plaintiff is, and on August 3, 1966 was, the owner of certain real estate in New Castle County, Delaware, known as 1705–1709B Marsh Road, Silvercroft, Wilmington. On the latter date plaintiff leased to defendant for a term of five years one of these premises, 1707 Marsh Road. The lease was terminable on specified contingencies before the expiration of the term, but there is no evidence that it has been terminated. The lease was not a part of the motion papers. A copy is, however, attached to the brief of defendant, and at the argument plaintiff admitted it to be an accurate copy.

The critical words to be interpreted appear in a form lease printed by a stationer. There is no indication which party supplied it. It contains no provision for the purchase of insurance by either party.

The complaint alleges that on May 31, 1967, defendant, while attempting to light an indoor cooking unit, caused a fire to start which resulted in damage to plaintiff's property. Plaintiff further alleges that the fire damaged not only the premises leased to defendant, but also the adjoining premises owned by plaintiff, and that the fire was proximately caused by defendant's negligence. Plaintiff claims damages to the leased and adjoining premises of $17,769.00. Defendant denies that he was negligent in any respect, but for purposes of the motion, defendant's negligence must be assumed.

Defendant's motion for summary judgment is directed solely against plaintiff's claim for damages to the premises leased to him, and does not encompass the claim for damages to the adjoining properties. In his brief, however, defendant also requests summary judgment as to plaintiff's claim for damage to the latter properties.

The provision in the lease defendant relies upon as a defense states that at the expiration of the lease term:

" * * * the said party of the second part [defendant] shall and will yield up and surrender quiet and peaceable possession of the premises, with the appurtenances, unto the said party of the first part [plaintiff], his Heirs or Assigns, in the same good order and condition as the same now are, reasonable wear and tear thereof, accidents happening by fire or other casualties excepted, any law or usage or anything herein contained to the contrary thereof notwithstanding."

The leased premises are located in Delaware and the lease was executed in Delaware. Both parties agree that the law of Delaware should be applied in determining the effect and construction of the lease.

The instant action was brought while the lease was in effect and is for an alleged tort which occurred during the term of the lease. Plaintiff is not seeking to enforce the provision of the lease, which requires defendant at its termina-

tion to surrender possession of the premises in good order "accidents happening by fire or other casualties excepted." The question, therefore, arises whether the quoted words upon which the defense is based have any relevance since they are simply an exception to defendant's contractual obligation to yield up possession at the end of the term.

No Delaware decision has been found which deals with the question whether the fire exception can properly be asserted as a defense to a tort action, and cases in other jurisdictions which discuss the question are not numerous. The following cases hold that a clause in the lease which excepts a fire loss from the obligation of the leasee to surrender the premises in good order can be used by the lessee as a defense to a landlord's tort action against the lessee for negligently having caused the fire. Belden Mfg. Co. v. Chicago Threaded Fasteners, Inc., 84 Ill.App.2d 336, 228 N.E.2d 532 (1967) (following *Cerny-Pickas, infra*); Rock Springs Realty, Inc. v. Waid, 392 S.W.2d 270, 15 A.L.R.3d 774 (Mo.1965); Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100 (1956); United States Fire Ins. Co. v. Phil-Mar Corp., 166 Ohio St. 85, 139 N.E.2d 330 (1956); General Mills, Inc. v. Goldman, etc., 184 F.2d 359 (8th Cir.1950), cert. denied, 340 U.S. 947, 71 S.Ct. 532, 95 L. Ed. 683 (1951) (applying Minnesota law). The following opinions support the view that such a clause is without relevance to a tort action, but relate only to a contract action based upon the lease. Sears, Roebuck & Co. v. Poling, 248 Iowa 582, 81 N.W.2d 462 (1957); United States Fire Ins. Co. v. Phil-Mar Corp., *supra*, 139 N.E.2d at 333–339 (dissenting opinion); General Mills, Inc. v. Goldman, etc., *supra*, 184 F.2d at 367–374 (dissenting opinion); see Slocum v. Natural Products Co., 292 Mass. 455, 198 N.E. 747 (1935) (although the lease provision exempted the lessee in a contract action, "[i]t does not necessari-

ly follow that the lessor would have no action in tort for the damage sustained."); Day Wood Heel Co. v. Rover, 123 Ohio St. 349, 175 N.E. 588 (1931) (recognizing distinction between lessor's actions in tort and contract).

In view of the interpretation hereinafter placed upon the fire exception clause in the present suit, it will be assumed, without deciding, that such a fire exception clause is applicable to a tort action as well as to a suit brought for a violation of the terms of the lease.

 Even if the fire exception clause in the lease were to be interpreted to protect defendant against a claim for liability for damages to the leased premises, there is no conceivable reason why the defendant should enjoy a similar protection against liability for damages negligently caused to the adjoining premises. The adjoining premises are not covered by the lease, and the lease contains no provision that has any application to them. They are beyond the reach of its terms. "[The] effect [of the lease] must be confined to the physical premises actually leased." Wilmington Housing Authority v. Williamson, 228 A.2d 782, 785 (Supreme Ct.Del. 1967). It follows that a contention which defendant makes in its brief that summary judgment should be rendered dismissing the claim for the fire damage to the properties which adjoin the leased premises cannot be accepted.

No case in Delaware has construed a fire exception clause similar to that involved in the present case as it relates to the leased premises.[1] However, such Delaware law as there is in related situations points strongly to the conclusion that the fire exception clause would not be interpreted by a Delaware Court to protect defendant against liability for fire damage occasioned by its negligence. In Wilmington Housing Authority v. Williamson, supra, the tenant (mother) and her four-year-old child sued the land-

---

1. The cases in other jurisdictions dealing with the effect of fire exemption clauses where the fire is the result of negligence are compiled in Annot., 15 A.L.R.3d 786, 806–816. The results in these cases differ depending on the standard of interpretation used by the court and the particular language appearing in the lease.

lord for injuries to the child and expenses of the tenant caused by the landlord having knowingly permitted a dangerous condition to exist on its property adjoining that leased to the tenant. Against the claim of the tenant the landlord relied upon a provision in the lease by which she released the landlord (228 A. 2d at 785):

> " 'from liability for any injury to the tenant or the members of his household, *resulting from any cause whatsoever,'* except for injury resulting from the willful acts of the Authority's employees." [2]

The Court interpreted this provision not to protect the landlord from liability for negligently maintaining its property adjoining that which it had leased. The Court said (228 A.2d at 785–786):

> "This conclusion flows from the general rule that contracts to relieve one from the consequences of his own negligence are not favored in the law and, if possible, will be construed not to confer immunity from liability. We recognized this rule as being the law of Delaware in Pan American [World Airways] v. United Aircraft Corp., supra [3 Storey 7, 53 Del. 7, 163 A.2d 582]."

In Pan American World Airways v. United Aircraft Corp., 3 Storey 7, 53 Del. 7, 163 A.2d 582 (Supreme Ct.Del. 1960), the Court applied Connecticut law to the effect that a contract should be construed, if possible, not to indemnify one from his own negligence. The Court said that the principle stated was the "general rule", and that (163 A.2d at 587):

> "The Delaware law appears to be the same. See Marshall v. Maryland, D. & V. Rwy. Co., [1 W.W.Harr. 170, 173,] 31 Del. 170, 173, 112 A. 526."

In Marshall v. Maryland, D. & V. Ry. Co., 1 W.W.Harr. 170, 31 Del. 170, 112 A. 526 (Super.Ct.Del.1921), a tenant sued the landlord for damages occasioned to the leased building by reason of the alleged negligence of the landlord. The lease provided that the tenant would indemnify the landlord against claims for:

> "damages of whatsoever kind or nature arising in any manner or under any circumstances through the exercise of any right granted or conferred hereby, whether such damages be sustained by the parties of the second part [the tenants] or by other person or persons, corporation or corporations which seek to hold the party of the first part [the landlord] liable."

The Court rejected the landlord's argument that this clause exonerated it from liability for loss by fire caused by its own negligence, saying (112 A. at 527):

> "The language of the provision set out in the plea, exempting the defendant company from claims for damages is obviously ambiguous. Clearly exemption from liability for negligence or pressed in the provision.
>
> \* \* \* \* \* \*
>
> It is the opinion of the court that the language of the provision is not sufficiently specific to relieve the defendant company from liability for damages to the said buildings and personal property therein of the plaintiffs, if occasioned by the defendant company in the manner as alleged in the declaration of the plaintiffs."

The same rule is applied when indemnification is provided for in agreements other than leases. Altemus v. Pennsylvania R. R. Co., 210 F.Supp. 834 (D. Del.1962). There Judge Layton held that under Delaware law and the law generally an indemnification agreement would not be interpreted to protect an indemnitee against his own negligence unless this was made "absolutely clear" in the contract drawn by the indemnitee.[3]

---

2. Italics supplied.

3. While the drafting of the agreement by the indemnitee was relied upon in the *Altemus* case, other Delaware decisions which are cited came to the same conclusion as did *Altemus*, even in the absence of this factor.

In Pennsylvania R. R. Co. v. Gulf Oil Corp., 223 A.2d 79 (Super.Ct.Del.1966), Judge Wright held, relying upon Pan American World Airways v. United Aircraft Corp., *supra,* that any ambiguity in an indemnity agreement should be construed against the indemnitee.

In Delaware Power & Light Co. v. Mayor & Council of the City of Wilmington, 200 A.2d 840 (Super.Ct.Del. 1964), Judge Stiftel (now President Judge) stated (200 A.2d at 841–842):

"Contracts to relieve an indemnitee from the consequences of its own negligence are not favored in the law. Pan American World Airways, Inc. v. United Aircraft Corporation, 3 Storey 7, 8, [53 Del. 7, 8,] 163 A.2d 582, 587; Anno: 175 A.L.R. 8, 30. Such contracts are to be strictly construed and will not be interpreted to provide such indemnification unless so expressed in clear terms. Pan American World Airways, Inc. v. United Aircraft Corporation, supra,. 163 A.2d at page 587; Altemus v. Pennsylvania Railroad Company, D.C.Del., 1962, 210 F.Supp. 834, 835; Marshall v. Maryland, D. & V. Ry. Co., 1 W.W.Harr. 170, [31 Del. 170,] 112 A. 526, 527; 42 C.J.S. Indemnity § 12; 27 Am.Jur., 'Indemnity', § 15."

In Hollingsworth v. Chrysler Corporation, 208 A.2d 61 (Super.Ct.Del.1965), Judge Christie stated (208 A.2d at 64):

"Courts in nearly all jurisdictions which have faced this problem have applied the general rule that the indemnitor is not to be viewed as an insurer and have indicated that the indemnitee will not be protected against the consequences of his own negligence unless the agreement clearly and unequivocally requires it. 175 A. L.R. 8 (1948). While the parties to the agreement need not use any peculiar and technical formula to achieve this objective, they must use clear and unmistakable language. Batson-Cook Co. v. Industrial Steel Erectors, 257 F.2d 410 (5th Cir.1958); Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L. R.A.,N.S., 1173 (1907)."

It is true that the Delaware Supreme Court has held, in interpreting some provisions in a lease (other than that of present concern), that

"[t]he general rule is that a lease is construed against a lessor in case of ambiguity."

Paul v. Paul's Liquor Store Co., 217 A. 2d 197, 199 (Supreme Ct.Del.1966). But the Delaware decisions in the specific area of responsibility between landlord and tenant for the negligence of one or the other in damaging the leased premises, and in the field of indemnification against liability based upon negligence have repeatedly held that any ambiguity in the instrument must be resolved against holding one immune from liability for his own negligence. See Dilks v. Flohr Chevrolet, Inc., 411 Pa. 425, 192 A.2d 682, 687 n. 10 (1963), in which it was held that the usual rule of construing a lease against a lessor and in favor of a lessee must yield to the principle that contracts against liability for negligence are not favored by the law and require such contracts to be strictly construed with every intendment against the party seeking their protection. This, then, is the standard by which the fire exception clause in the present case must be construed.

Smoke v. Turner Const. Co., 54 F. Supp. 369 (D.Del.1944), is relied upon by defendant as a precedent for exonerating him from liability under the lease for a fire which he negligently caused. *Smoke* held an indemnity agreement to cover the indemnitee's negligence. The Court held that, unless the indemnification clause before the Court were interpreted to immunize the indemnitee against his own negligence, it would be meaningless, since under the common law the indemnitor would not have been liable for the loss unless he had been negligent. Indemnification, the Court said, would have been unnecessary unless it were for the purpose of protecting the indemnitee from a claim based upon his negligence.

 Here, as in *Smoke,* the tenant would be responsible to the landlord under the common law only if the fire

were caused by the tenant's negligence. 32 Am.Jur., Landlord & Tenant, § 783; 10 A.L.R.2d 1023. So, under the reasoning of *Smoke*, it might be argued that the fire exception clause must have been intended to change the common law liability of the tenant by immunizing the tenant from liability for his negligent acts, for otherwise the clause would be meaningless. The plausibility of such an argument, however, is weakened by another consideration. The lease requires the tenant to surrender possession of the premises at the end of the term "in the same good order * * * as the same now are, reasonable wear and tear thereof * * * excepted." This neither adds nor detracts from the common law rights or liabilities of the parties. 32 Am.Jur., Landlord & Tenant, §§ 201, 779; 51C C.J.S. Landlord & Tenant §§ 366(1), 408; 10 A.L.R.2d 1014. It is merely declaratory of the common law. In this sense it is superfluous. The parties having thus included one superfluous provision in the lease, the fact that the fire exception clause would also be superfluous if limited to a fire not attributable to the negligence of the tenant, does not create the anomaly which arguably it otherwise might have and therefore justify a construction that the fire exception clause protects the tenant against liability for his own negligence.

Furthermore, *Smoke* is the only case in Delaware which has been found that construes an indemnity contract to protect an indemnitee against a claim based on his own negligence. It cannot be doubted that numerous Delaware decisions subsequent to *Smoke* (including those of the Supreme Court) have held that the interpretation of a contract (lease or indemnity agreement) to immunize one against his own negligence will be viewed with disfavor unless such an intention by the parties is clearly disclosed by the contract terms. To the extent that *Smoke* may be susceptible to an interpretation at variance with these later decisions, it cannot be said to represent the current state of the law in Delaware.

Does the lease disclose with unmistakable clarity an intention to exonerate the defendant from responsibility for damages resulting from a fire due to his own negligence; or is the lease ambiguous in this regard? The critical words are "accidents happening by fire excepted, any law or usage or anything herein contained to the contrary thereof notwithstanding."

The word "accident" has a dual meaning. It is sometimes defined to include acts of negligence, and sometimes to include only non-negligent acts. Black's Law Dictionary 30–31 (4th ed. 1957), says:

"In its proper use the term ["accident"] excludes negligence; * * * in its ordinary meaning it does not negative the idea of negligence on the part of the person whose physical act caused the occurrence."

This twofold meaning of "accident" is likewise recognized in 1 Bouvier's Law Dictionary 101–102 (3rd ed. 1914):

"An event which, under the circumstances, is unusual and unexpected. An event the real cause of which cannot be traced, or is at least not apparent. * * *

"*In Equity Practice.* Such an unforeseen event, misfortune, loss, act, or omission as is not the result of any negligence or misconduct in the party."

See also 1 C.J.S., Accident; cases cited in 1 Words and Phrases, "Accident" pp. 477–478, 564–567 (1964); Webster's Seventh Collegiate Dictionary 5 (1965).

In Carstens v. Western Pipe & Steel Co., 142 Wash. 259, 252 P. 939 (1927), the Court was called upon to construe a provision in a lease which required the tenant to surrender the premises in as good condition as when it took possession, "damage by fire excepted." The Court held that this did not protect a lessee from claims for a fire which it had negligently caused. The Court characterized non-negligent fires as "accidental fires." (252 P. at 941).

In Winkler v. Appalachian Amusement Co., 238 N.C. 589, 79 S.E.2d 185 (1953),

the Court likewise treated as "accidental" a fire which had not been caused by the tenant's negligence, as contrasted to a fire which was negligently caused. It said (79 S.E.2d at 189–190):

> "The lessee is not liable for accidental damage by fire; but he is liable if the buildings are damaged by his negligence."

█ It is not to be assumed from what has been said that the phrase "accidents happening by fire," or a phrase substantially like it, can never, in any context, include a negligently-caused fire. The authorities which have been cited simply demonstrate there is substantial support for interpreting the expression "accidents happening by fire" to mean fires which have not been created by negligence. Because this is so, the expression is at least ambiguous, and lacks that degree of specificity or clarity which Delaware law demands as a condition to construing it to exculpate from liability the tenant whose negligence has caused the fire loss.

█ It is not apparent how the words "any law, usage or anything herein to the contrary thereof notwithstanding" which are appended to the fire exception clause can exculpate the defendant for damages flowing from the fire which he has negligently caused. The words simply mean that the fire exception clause, however it might be construed, is not to be affected by any law, usage or lease provision at variance with it. Since the fire exception clause has been interpreted to mean that its exculpatory effect is limited to nonnegligent fires, the words "any law, usage or anything herein to the contrary thereof notwithstanding" make it clear that any law, usage or lease provision which might exculpate a tenant from liability for negligently creating a fire must yield to the contrary interpretation which this Court has given to the fire exception clause.

The motion of defendant for summary judgment is denied.