ONE HUNDRED SOUTH WACKER DRIVE, INC. *et al.*, Plaintiffs, *v.* SZABO FOOD SERVICE, INC., Defendant-Appellee.—(ONE HUNDRED SOUTH WACKER DRIVE, INC., Appellant.)

(No. 57025; 

First District (1st Division)—September 10, 1973.

Clausen, Hirsh, Miller & Gorman, of Chicago, (John J. Witous, Frank L. Schneider, and James T. Ferrini, of counsel,) for appellant.

Bernard Harrold and John M. Lison, both of Chicago, (Wildman, Harrold, Allen & Dixon, of counsel,) for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff, One Hundred South Wacker Drive, Inc., is the lessor, and the defendant, Szabo Food Service, Inc., the lessee, under a lease covering part of the premises at One Hundred South Wacker Drive in Chicago. On April 3, 1968, while the defendant was engaged in the operation of its business, a fire occurred upon the leased premises which caused substantial damage both to the demised premises and portions of the building not leased to the defendant, for which the plaintiff sought recovery in the amount of $500,000. The complaint was in five counts. In Count I, the plaintiff charged the defendant with several specific acts of negligence, including negligence in the use of inherently dangerous equipment, appliances, liquids and fuels. Count II was based on the doctrine of *res ipsa loquitur*. Count III charged the defendant with violation of several provisions of the Municipal Code in derogation of its express duty under certain portions of the lease. Count IV charged the defendant with responsibility for its disregard of the duty to exercise a high degree of care commensurate with the danger which arises from the use of portable cooling and food preparation utensils and appliances and highly flammable liquids and compressed gasses. Count V charged the defendant with violation of specific provisions of the lease. The trial court granted the defendant's motion for judgment on the pleadings.

This case hinges on the interpretation of the following lease provision, termed a "yieldback" clause:

"XIV. At the termination of this lease by lapse of time or otherwise:

* * *

2. Tenant shall return the Leased Premises and all equipment and fixtures of Landlord in as good condition as and when Tenant originally took possession * * * *ordinary wear and loss or damage by fire or other casualty* * * * *excepted,* failing which Landlord may restore the Leased Premises to such condition and Tenant shall pay the cost thereof." (Emphasis added.)

The defendant contends that this provision exculpates it from any liability for damages caused by its negligence to the entire building; the plaintiff, on the other hand, insists that it exculpates the defendant for damages only to the leased premises. The defendant relies principally

on the following cases: *Cerny-Pickas & Co. v. C. R. Jahn Co.,* 7 Ill.2d 393, 131 N.E.2d 100; *Stein v. Yarnall-Todd Chevrolet, Inc.,* 41 Ill.2d 32, 241 N.E.2d 439; and *Belden Manufacturing Co. v. Chicago Threaded Fasteners, Inc.,* 84 Ill.App.2d 336, 228 N.E.2d 532.

In *Cerny-Pickas,* the issue before the court was whether a provision similar to the one before us exonerated the lessee from liability for his negligence, and the Illinois Supreme Court held that it did. In *Stein,* the yieldback clause provided that the premises were to be returned in as good condition as when the "lessee took possession, ordinary wear and tear or damage by fire or *other casualty beyond lessee's control* excepted." (Emphasis added.) The Illinois Supreme Court rejected the lessor's argument that, since the language, emphasized above, was not present in *Cerny-Pickas,* the defendant was not exonerated from its own acts of negligence. In both cases the dominating consideration was the "determination that the parties had intended that the lessor would look only to fire insurance proceeds to compensate it for fire losses." (*Stein v. Yarnall-Todd Chevrolet, Inc.,* 41 Ill.2d at 35.) Of utmost significance, however, is the fact that in both cases the lease covered the entire premises.

In *Belden,* the plaintiff, as here, leased a portion of its building to the defendant under a yieldback clause identical to that in *Cerny-Pickas.* The plaintiff and another tenant whose property was also damaged brought suit against the defendant. On appeal of the trial court's dismissal of the complaint, the lessor made only two arguments: 1. The statute declaring exculpatory clauses exempting lessors from liability void and unenforceable should be construed as applying to exculpatory clauses exempting lessees. 2. Exculpatory clauses favoring lessees should be held void. It is obvious therefore, contrary to the defendant's argument here, that the appellate court in *Belden,* when it rejected the lessor's argument, did not have before it and did not pass on the issue that is before us.

We agree with the plaintiff's contention that the clause in issue exculpates the defendant only to the extent that he damaged the leased premises. The yieldback clause expressly refers to the "Leased Premises" only. Standing alone, there would appear to be no doubt that any exculpation arising from this clause would be restricted to the leased premises. But, the defendant argues, since the terms of the lease contemplate that the lessor will insure the entire building and since the lessee was required through its rental payments or directly to reimburse the lessor for the cost of fire insurance, *Cerny-Pickas* is controlling. The Illinois Supreme Court in *Cerny-Pickas* came to its conclusion for the following reasons: It was questionable whether the lessee could get a policy covering fires caused only by his own negligence; the parties must

have contemplated that the property must be insured by policies covering both accidental and negligent fires; and, most important, in practical effect the tenant paid the cost of the fire insurance through his rental payments.

■■ The primary object of the construction of a contract is to give effect to the intention of the parties. A contract is to be construed as a whole, giving meaning and effect to every provision and word, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose. *Gay v. S. N. Nielsen Co.*, 18 Ill. App.2d 368, 152 N.E.2d 468.

There is one vital clause present in this lease that is absent in *Cerny-Pickas* and *Stein*. That clause provided:

> "II. Tenant agrees to pay, as additional rent hereunder, * * * a *proportion* of any increase in direct expenses paid or incurred by Landlord on account of the operation or maintenance of the Building over prevailing costs in effect for the first full year of occupancy of the Leased Premises. * * * *Said proportion shall be such fraction of the increase in expenses as the space of the Leased Premises bears to the total rental space in the Building.* The term 'expenses' as used herein shall include all direct costs of operation and maintenance as determined by standard accounting practices and shall include the following, by way of illustration and not limitation: * * * *insurance premiums* * * *." (Emphasis added.)

Thus, the parties expressly noted that the rent would be increased to pay for fire insurance only in the proportion that the defendant's rental space bore to the entire premises. As the plaintiff points out, the defendant, contrary to his suggestion here, could not in any event insure any other part of the premises since it lacked an insurable interest.

In *Cerny-Pickas,* the court said (7 Ill.2d 393, 398):

> "While the cases are not in accord, we believe that the result here reached is supported by better reasoned decisions. Seventy years ago in *Lothrop v. Thayer*, 138 Mass. 466, 475, the court said: 'The ancient law has been acquiesced in, and consciously or unconsciously, the cost of insurance to the landlord, or the value of the risk enters into the amount of rent.' And in the leading case of *General Mills v. Goldman*, 184 Fed.2d 359, the court said (p. 366): 'They necessarily consciously figured on the rentals to be paid by the tenant as the source of the fire insurance premiums and intended that the cost of insurance was to come from the tenants. In practical effect the tenant paid the cost of the fire insurance.' "

In *Stein v. Yarnall-Todd Chevrolet, Inc.*, 41 Ill.2d 32, at 35, the Illinois Supreme Court analyzed *Cerny-Pickas*:

"It is clear that the dominating consideration in this court's ruling in *Cerny-Pickas* was its determination that the parties had intended that the lessor would look only to fire insurance proceeds to compensate it for fire losses, though the losses might be attributed to the lessee's negligence. The result was economically realistic, for the cost to the lessor of fire insurance premiums is an item expected to be considered in fixing the amount of rent. Thus, in practical effect it is intended that the premiums will be paid by the lessee through payments of rent. [Citations.]"

We conclude, from the stress placed by the Supreme Court in both cases on the fact that the lessee in effect paid for the fire insurance, that his exculpation should be coextensive only with his obligation to pay the insurance premiums.

While this precisely same issue has not been passed on in Illinois, authorities from other jurisdictions support the plaintiff's position. In *Hardware Mutual Insurance Co. of Minnesota v. C. A. Snyder, Inc.* (3d Cir.), 242 F.2d 64, 68, the insured owned two adjoining buildings at 229 and 231 West Jefferson Street in Butler, Pennsylvania. The defendant leased the property at 229 and a fire damaged both properties. The lessee contended that the yieldback provision of the lease relieved it from liability for damage done to 231 because the buildings were built and operated as a unit. The court said in rejecting the lessee's argument:

"The fact that the buildings were a unit and the parties could contemplate that if one burned, the other would burn, does not affect lessee's responsibility under the terms of the lease. As we observed with reference to lessee's liability as to 229, a waiver of responsibility for negligence must be expressed in clear and precise language."

In *Sannit v. Aarons*, 297 F.Supp. 798, the plaintiff owned real estate known as 1705-1709B Marsh Road in New Castle County, Delaware and leased to the defendant the premises at 1707 Marsh Road. The plaintiff sued for fire damage not only to the premises leased to the defendant but also the adjoining premises owned by the plaintiff. The court said at page 800:

"Even if the fire exception clause in the lease were to be interpreted to protect defendant against a claim for liability for damages to the leased premises, there is no conceivable reason why the defendant should enjoy a similar protection against liability for damages negligently caused to the adjoining premises."

We conclude, therefore, that the yieldback clause refers only to

the demised premises; and we are not persuaded to adopt a contrary position because the lease refers to "The Building" in certain clauses and because the tenant has the privilege of using those portions of the building essential to its use of the demised premises.

For these reasons the order granting judgment on the pleadings is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.

Judgment reversed and cause remanded with directions.

GOLDBERG, and HALLETT, JJ., concur.